SKOKIE GOLD STANDARD LIQUORS, INC., *et al.*, Plaintiffs-Appellants, *v.* JOSEPH E. SEAGRAM & SONS, INC., *et al.*, Defendants-Appellees.

First District (5th Division) No. 82—2335

Opinion filed August 5, 1983.

Jay L. Schultz, of Chicago (Schultz & Schultz, of counsel), for appellants.

Stanley D. Robinson, of Kaye, Scholer, Fierman, Hays & Handler, of New York, New York, and Louis L. Biro, of Louis L. Biro, P.C., and Patrick W. O'Brien and P. Terrence Buehler, both of Mayer, Brown & Platt, both of Chicago, for appellee Joseph E. Seagram & Sons, Inc.

Harvey M. Silets and Shelly B. Kulwin, both of Silets and Martin, Ltd., of Chicago, for appellee Federated Distributors, Inc.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from an order of the trial court disqualifying plaintiffs' counsel in an action to enjoin violations of section 104a of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.104a), section 220 of "An Act to revise the law in relation to criminal jurisprudence" (Ill. Rev. Stat. 1981, ch. 32, par. 211.1), section 4 of "An Act in relation to the use of an assumed name ***" (Ill. Rev. Stat. 1981, ch. 96, par. 7), and section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 312). The sole issue on review is the propriety of that disqualification.

Joseph E. Seagram & Sons, Inc. (Seagram), is an Indiana corporation authorized to transact business in Illinois. Operating through six

divisions, it is engaged in the manufacture and sale of distilled spirits and wines. Federated Distributors, Inc. (Federated), an Illinois corporation, purchases and sells alcoholic beverages at wholesale through four divisions. On October 16, 1981, plaintiffs filed a complaint alleging in separate counts that Seagram and Federated were operating in violation of several statutes relating to the use of assumed corporate names. Seagram moved to disqualify plaintiffs' attorney, Allen H. Schultz (Schultz) and the law firm of Schultz & Schultz for violations of Canons 4 and 9 of the Illinois Code of Professional Responsibility. (79 Ill. 2d Canons 4, 9.) It alleged that the firm of Schultz, Biro & Karmel, predecessor of Schultz & Schultz, was retained by Seagram in 1969 to perform work with respect to the reorganization of its corporate structure in Illinois. As a part of that work, Seagram maintained, Schultz, Biro & Karmel completed and filed in its behalf applications to do business under various assumed names.

In support of its motion, Seagram presented the affidavit of M. Jacqueline McCurdy, a vice-president of Seagram, attesting that a search of Seagram's corporate records showed that it retained Schultz, Biro & Karmel in 1969. Four letters from this period relating to the legal work performed were also filed as exhibits. Each is signed:

"Schultz, Biro & Karmel
 (Signature)
Louis L. Biro."[1]

One letter is on letterhead stationery with the legend "Law Offices of Schultz, Biro & Karmel" at the top, and in the upper left corner the names Allen H. Schultz, Louis L. Biro, Robert Karmel, and Neal D. Rosenfeld. That letter is written in the singular and refers to "my client." The other three letters are carbon copies which do not show any letterhead, but they refer to "our client" and are written in the plural, including one directed to an officer of Seagram which states in pertinent part:

"On September 8, 1969 we filed with the Illinois Liquor Control Commission the new territory registrations at both the Chicago office and by mail to the Springfield office. *** Enclosed is a copy of our covering letter *** regarding the registrations that were mailed to the Springfield office. *** We are also enclosing our statement for professional services rendered. If I can be of any further assistance to you in this matter, please do not hesitate to contact me."

---

[1]Biro is co-counsel for Seagram in the present action.

An affidavit of Louis L. Biro states that he was associated with Schultz in the practice of law from 1954 to 1970 under the various firm names Schultz & Biro, Schultz, Lippman & Biro, and Schultz, Biro & Karmel. During the relevant years, the firm of Schultz, Biro & Karmel was listed in Sullivan's Law Directory, Martindale-Hubbell Law Directory, and the Chicago Telephone Directory. The three attorneys referred to each other as partners in their relationships with clients and other members of the legal profession, and the name Schultz, Biro & Karmel appeared on stationery and billing invoices sent to clients. When he first joined Schultz in 1954, it was agreed that he (Biro) would receive at least $6,500 annually. In return for office space and a secretary, Schultz was to receive the first $5,000 of fees generated by clients brought in by him (Biro) as well as a percentage of all fees over $5,000. Billings sent to clients contained the legend "Schultz, Biro & Karmel," and clients made their payments to Schultz, Biro & Karmel. Schultz received all fee payments and deposited them in either his or the firm's account; the share of the fees Biro generated was computed at least annually. Seagram retained the firm in 1969 and was billed in accordance with the above procedure. He and Schultz shared the fee for this work. While they were associated, he and Schultz worked closely together on a variety of legal matters for their respective clients, and Schultz was aware of his (Biro's) clients and the work he was doing because they shared the fees generated.

In a supplemental affidavit, Biro stated that:

"1. In 1969, Joseph E. Seagram & Sons, Inc. retained Schultz, Biro & Karmel to assist the Corporation with various corporate reorganization matters, including but not limited to: discussions regarding the territorial and label registrations required in the State of Illinois pursuant to the corporate reorganization, the requirements for licensing or not licensing the Corporation in its various divisions and complete compliance with the Illinois corporation statutes, including the Assumed Name statutes. The professional services rendered by the Firm of Schultz, Biro & Karmel included conferences which I had with the General Counsel of Joseph E. Seagram & Sons, Inc., the exchange of written materials and numerous telephone conversations.

2. During the period from 1954 to 1970, while I was associated with the law firm of Schultz, Biro & Karmel, it was my regular practice to discuss with Mr. Schultz all client matters which I was handling and that he was handling. It was the nor-

mal practice in our three person office to discuss all new clients and matters. Because the work performed by [sic] Seagram, which is the subject of this controversy, was completed approximately 12 years ago, I cannot recall a specific conversation about Seagram matters with Mr. Allen H. Schultz, but do unequivocally state that it was our normal practice to discuss client matters during the entire 16 year period when Mr. Allen H. Schultz and I practiced law together."

Seagram also presented a letter dated November 12, 1970, written on behalf of a client other than Seagram, which is signed:

"Schultz, Biro, Karmel & Rosenfeld
 (Signature)
Allen H. Schultz."

The letter is on stationery bearing the name Schultz, Biro, Karmel & Rosenfeld and is written in the plural, i.e., "[w]e are writing you," "[p]lease advise us," "please forward them to us," and "[w]e are enclosing."

An affidavit of Robert Karmel states in part that, in 1969 and for several years prior and subsequent thereto, he practiced law in association with Schultz and Biro under the name Schultz, Biro & Karmel, and that they held themselves out to the public as a partnership. During that time he performed services under that name for his own clients as well as for Schultz' clients, and the name Schultz, Biro & Karmel appeared on all stationery and billing invoices sent to clients.

Plaintiffs' verified answer denied the above allegations, and in an affidavit in support thereof Schultz states that Schultz, Biro & Karmel was not an actual law firm nor a legal partnership; the firm did not have a partnership agreement, file an income tax return, or possess an employer's taxpayers account number. Each attorney was a sole proprietor, retained all fees generated by him, and filed his own income tax return. Biro and Karmel did perform selective legal services for him in return for office space, secretarial services, stationery (letterheads and billheads), access to a law library, and various peripheral services. Biro also received a monthly salary, but he (Schultz) was never privy to the legal problems of any of Biro's or Karmel's clients. Seagram retained Biro in 1969, not the law firm of Schultz, Biro & Karmel, and he (Schultz) never spoke with any representatives of Seagram, never performed any professional services for it, and never received any part of the fee paid by it. Biro did not share any confidential information with him which he (Biro) may have received from any client, including Seagram. He employed Biro and Karmel from 1954 to 1970 to assist him in the practice of law. In order to enhance their

standing in the legal community, he agreed, at their request, to use the assumed name of Schultz, Biro & Karmel to identify the relationship. However, he never referred to them as his partners, there was no partnership, and he made it clear to others that Biro and Karmel were employees. Only Biro was involved with Seagram, and the only service provided by him was the filing of public documents with the Cook County Clerk and the Illinois Liquor Control Commission; these filings involved nothing legal or confidential. Biro received $5,000 a year in monthly installments as an advance against his fees. He repaid this advance at the end of each year and retained the balance of the fees he generated. To facilitate bookkeeping, Biro's fees were recorded by a secretary and deposited in a special bank account, but Biro could draw on that account at any time. Schultz denied receiving any percentage of Biro's fees, including fees received from Seagram, or knowing that Biro ever represented Seagram.

A hearing on the motion to disqualify was held on March 3, 1982. No witnesses were presented by either side, but Schultz, in arguing the motion, repeated his assertions that there was no partnership, that he had no knowledge of Biro's prior representation of Seagram, and that the only work performed in 1969 was the filing of public documents. During that hearing, the trial court expressed its desire to have a "complete hearing" on the motion to disqualify, to which Schultz responded "What do you mean by a 'complete hearing'? I understand this to be a complete hearing." Without further hearings, the trial court issued a memorandum opinion on March 15, 1982, which states in relevant part:

> "During such time as Allen H. Schultz, attorney for plaintiffs herein, was associated with Louis L. Biro, Biro represented SEAGRAM. In fact, Louis Biro, during the course of his association with Schultz, Biro & Karmel, performed the very work which is now being attacked by the plaintiffs as illegal. Mr. Biro indicated in an Affidavit, *** that he and Mr. Schultz worked closely together on a variety of legal matters, and that Mr. Schultz was aware that SEAGRAM was represented by Mr. Biro. Mr. Biro further indicated that all billing for legal services rendered was done under the firm name of Schultz, Biro & Karmel.
>
> Allen Schultz stated in open court that the law firm of Schultz, Biro & Karmel was not a partnership; rather the arrangement between he [sic] and Mr. Biro was that of employer/ employee. Mr. Schultz further stated that there were only three members of the firm and that they worked independently of

each other. He did not deny that clients were billed under the firm name.

It is the opinion of this Court that the statements made by Mr. Schultz, both in open court and in the memorandum submitted by him, are not sufficient to rebut the presumption that he was privy to certain confidential and secret information involving SEAGRAM.

It is the opinion of this Court that certain 'confidential and secret information' could have been imparted to Mr. Allen H. Schultz, and that by virtue of his association with Louis L. Biro, who performed the legal services complained of herein while associated with Mr. Schultz, he is bound by Canon 4.

\* \* \*

It is abundantly clear from the facts heretofore presented that to permit Allen H. Schultz and the law firm of Schultz and Schultz to continue their representation of the plaintiffs in their Complaint against SEAGRAM, would result in more than just the 'appearance' of impropriety. It is this Court's opinion that in the interest of public trust, it is crucial that such an appearance of impropriety be avoided.

Further, this Court finds that because of Mr. Schultz' relationship with Mr. Biro, during such time as Mr. Biro was representing SEAGRAM, that to permit Mr. Schultz or his law firm to continue in their representation of the Plaintiffs herein would result in unfairness to the Defendant, SEAGRAM."

The trial court ordered that Schultz and the firm of Schultz & Schultz was disqualified from any further representation of plaintiffs in pursuing any claim against Seagram which sought to attack any legal work performed by Biro during the time that Biro was associated with Schultz.

On March 17, 1982, plaintiffs moved to vacate the above order, and Seagram and Federated requested time to respond to that motion. Plaintiffs objected to any participation by Federated, asserting that it had presented no motion to disqualify and was not protected by the March 15 order. Federated maintained, and the trial court agreed, that it had orally joined in Seagram's motion. All parties were granted leave to present memoranda with regard to the motion to vacate, but no further evidence was presented. On August 30, 1982, the trial court stated orally that the motion to disqualify applied to Federated, and it would so order. In a written order of that date it denied without prejudice plaintiffs' motion to sever their actions against Seagram and Federated, filed May 7, 1982, and further stated:

"This cause coming on for hearing on plaintiffs' Motion to Vacate the Order of March 15, 1982 disqualifying Allen H. Schultz and the law firm of Schultz & Schultz from further representation of the plaintiffs against all defendants:

It is hereby ordered that the motion is denied, and this Court's Order of March 15, 1982 is sustained."

The trial court found that there was no just reason to delay enforcement or appeal. Plaintiffs' motion to vacate the August 30 order was denied on September 17, 1982, and this appeal followed.

OPINION

■■ Preliminarily we note that there are few Illinois cases relevant to the issue of attorney disqualification. We have held that Canon 4 ("A lawyer should preserve the confidences and secrets of a client") and Canon 9 ("A lawyer should avoid even the appearance of professional impropriety") of the Illinois Code of Professional Responsibility may provide a basis for such disqualification, and that "[t]he relevant test *** is 'where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.' [Citations.]" (*La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 664, 440 N.E.2d 1073, 1080.) Here, however, plaintiffs do not contest the applicability of Canons 4 and 9, nor do they contend that there is no substantial relationship between the former representation by Biro and the present action. Instead, they ask us to go beyond *La Salle* and consider three related issues not previously decided by this court. First, they maintain that the party seeking disqualification must show that confidences or secrets were imparted by it to the attorney representing it in the prior matter. Second, since it is undisputed that Biro performed the actual legal services in question, they maintain that Schultz, a former associate, may rebut, and has rebutted, any presumption that he was privy to Seagram's confidences or secrets. Third, plaintiffs ask us to consider whether an attorney also must be disqualified from representing another party against the codefendant of a former client where there has been no showing that an attorney-client relationship ever existed between the codefendant and the attorney or one with whom he was associated in the practice of law.

Before reaching these three important issues, however, we must address two peripheral matters raised by plaintiffs: whether the trial court erred in denying disqualification on the grounds of *laches* and waiver; and the standard to be employed by us in reviewing the trial

court's decision.

With regard to the first of these questions, plaintiffs maintain that Schultz represented Seagram's adversaries in two prior actions, *J.W.T., Inc. v. Joseph E. Seagram & Sons, Inc.* (N.D. Ill. 1972), 347 F. Supp. 965, and *Calvert Distillers Co. v. Vesolowski* (1973), 14 Ill. App. 3d 634, 303 N.E.2d 170, and that issues were raised in each case regarding Seagram's use of assumed names. They argue that Seagram failed to present a motion to disqualify Schultz in those actions and therefore is barred from doing so in the instant action.

Plaintiff's contention that the trial court refused to deny disqualification on these grounds is not supported by the record; to the contrary, the trial court was never asked to rule on the issue of *laches* or waiver, since the question was not raised below. Issues and arguments which were not presented to or considered by the trial court cannot be raised for the first time on review. (*Klubeck v. Division Medical X-Ray, Inc.* (1982), 108 Ill. App. 3d 630, 439 N.E.2d 506.) The rationale for this rule is clearly evident in the case before us. Plaintiffs assert that the same issues were raised in the prior cases as are raised here, yet there is nothing in this record which supports that statement, nor has Seagram had an opportunity to present evidence which might contradict it. Similarly, we have no way of knowing, other than plaintiffs' unsupported statement, whether a motion to disqualify was presented in those cases, or whether it might have been presented and denied for some reason inapplicable to the case at bar. Seagram has had no opportunity to offer proof to refute or overcome this argument.

Furthermore, several courts have held that, where disqualification is predicated upon a violation of Canon 9, which involves considerations of the public interest, the doctrines of waiver and *laches* are inapplicable. For example, in *In re Corrugated Container Antitrust Litigation* (5th Cir. 1981), 659 F.2d 1341, 1348-49, the court noted:

> "Our cases indicate that disqualification is a matter of ethical, not legal, considerations [citation], and that, particularly in cases involving Canon 9, the interest of the client is not the only consideration. Indeed, part of our test for disqualification under Canon 9 calls for a weighing of the likelihood of public suspicion. [Citations.] While in some circumstances the client may be able to consent to or waive his objection regarding a violation of Canon 4 or Canon 5, the client may not, by delay or any other action, remove from the court the responsibility of weighing the likelihood of public suspicion of the legal profession when Canon 9 is involved."

A similar response to an argument that the issue was waived by the movant's failure to raise it in other litigation is contained in *MPL, Inc. v. Cook* (N.D. Ill. 1980), 498 F. Supp. 148, 151, wherein the court stated that "no claim of laches or waiver can bar this Court from applying a prophylactic rule intended to protect the integrity of lawyer-client relationships and with it the ethics of the profession." Since the present action similarly involves questions of the appearance of impropriety and concerns for the public interest in maintaining the attorney-client relationship, it is our view that the issue of laches and waiver, even if they had been properly before the trial court, would not have warranted denial of disqualification under the circumstances of this case.

Our decision herein should not be interpreted to mean that the question may never be waived. We note that the third district recently applied the doctrine of waiver in affirming the trial court's denial of a motion to disqualify the defendant's attorney in *Roth v. Roth* (1980), 84 Ill. App. 3d 240, 405 N.E.2d 851. We believe that case is distinguishable from the instant action. In *Roth*, the plaintiffs knew of the potential impropriety from the outset of the action, but allowed the litigation to proceed for two years before presenting their motion to disqualify the defendant's counsel. During that time the attorney in question had prepared a complex defense, and plaintiffs conceded that he had no actual knowledge of his former firm's representation of them in a prior, related matter. It is possible that, under similar circumstances, we would find application of the waiver doctrine appropriate. Here, however, there was no delay in presenting the motion to disqualify, and Seagram does not concede that Schultz has no knowledge gained during the prior representation.

With regard to the appropriate standard of review, this court held in *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073, that a motion to disqualify is addressed to the sound discretion of the trial court, and its determination will not be disturbed absent a showing of abuse of that discretion. Nevertheless, plaintiffs maintain that, where all evidence was presented through affidavits and no evidentiary hearing was conducted, our review is not limited by the restrictive "abuse of discretion" standard; rather, they contend, we must consider the evidence presented and make our own determination whether any violation of ethical norms has occurred. In support thereof, they cite *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715, 721, wherein the court stated:

"Preliminarily, it is important to note the limits of the scope

of review by which we are guided. All evidence in the case at bar comes via affidavits. The district court neither held an evidentiary hearing on the disqualification motion nor did it make findings of fact to which we must defer. Under similar circumstances, we have stated and we now reaffirm that district courts enjoy no particular advantage over appellate courts in their formulation of ethical norms. [Citations.] It is thus appropriate for us, in this case, to determine whether the district court's disqualification order was predicated upon a proper understanding of applicable ethical principles. [Citations.]"

The above-quoted language, when read in the context of the entire case, does not stand for the proposition which plaintiffs assert, namely, that the standard of review is different because the evidence was presented by way of affidavit. In *Freeman*, the district court employed a standard under which the presumption that members of a firm share confidences was irrebuttable; the circuit court held that this standard was erroneous, that such a presumption was rebuttable, and remanded to the district court for further consideration of that issue. It is apparent from a subsequent case that, where the proper legal principles have been employed, the Seventh Circuit has not abandoned the "abuse of discretion" standard of review where all evidence was presented through affidavits. See *La Salle National Bank v. County of Lake* (7th Cir. 1983), 703 F.2d 252.

Viewed in this light, it appears that *Freeman* states no more than what has always been the standard of review in Illinois courts. Where the issue involves solely a question of law, it will be determined by this court independent of the trial court's judgment (*Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525), but where the question involves resolution of a factual question, the trial court's determination will not be disturbed unless unsupported by the evidence (see *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073). We are mindful of the difference between questions of law and questions of fact, and will employ the appropriate standard of review where applicable.

We turn now to the three main issues raised by plaintiffs and consider first their contention that the trial court erred in extending the scope of Canons 4 and 9 to information allegedly imparted by a client for the purpose of filing it as a matter of public record. Their argument assumes that Seagram imparted no information to Biro beyond what is contained in the public filings. However the cases cited by plaintiffs in support of their argument involve not Canons 4 and 9 but

the evidentiary privilege prohibiting disclosure of confidential information imparted to an attorney during the course of his representation. (See *Dickerson v. Dickerson* (1926), 322 Ill. 492, 153 N.E. 740; *Monier v. Chamberlain* (1966), 66 Ill. App. 2d 472, 213 N.E.2d 425, *aff'd* (1966), 35 Ill. 2d 351, 221 N.E.2d 410.) They assert that all information received by Biro was disclosed as a matter of public record when he filed documents on Seagram's behalf with the clerk of Cook County, and it is these documents which they are relying upon in pursuing this action rather than any information possibly received during the course of the prior representation.

■ Initially, we note that we are not concerned here merely with attorney-client privilege. As one court has noted, the ethical obligation of a lawyer to guard the confidences and secrets of his clients is broader than the attorney-client privilege. (*NCK Organization Ltd. v. Bregman* (2d Cir. 1976), 542 F.2d 128.) "[T]he client's privilege in confidential information disclosed to his attorney 'is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources.' [Citation.]" *Emle Industries, Inc. v. Patentex, Inc.* (2d Cir. 1973), 478 F.2d 562, 572-73.

■ Furthermore, plaintiffs' argument places the burden on Seagram to prove that something more than that which is contained in the public record was revealed to its attorney. However, in order to preserve the confidentiality of the attorney-client relationship, the Federal courts have uniformly held that, once it is shown that the prior representation is substantially related to the action in question, it is irrebuttably presumed that confidential information was disclosed. (*Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (5th Cir. 1981), 646 F.2d 1020, *cert. denied* (1981), 454 U.S. 895, 70 L. Ed. 2d 211, 102 S. Ct. 394; *Cheng v. GAF Corp.* (2d Cir. 1980), 631 F.2d 1052, *vacated on other grounds* (1981), 450 U.S. 903, 67 L. Ed. 2d 327, 101 S. Ct. 1338; *Schloetter v. Railoc of Indiana, Inc.* (7th Cir. 1976), 546 F.2d 706.) The rationale for this rule is best explained in *In re Corrugated Container Antitrust Litigation* (5th Cir. 1981), 659 F.2d 1341, 1347, wherein the court stated:

> "*** it is evident that the presumption arising under the substantial relationship test is not the ordinary type of presumption that is intended to obviate the need for proof where proof would be difficult. Instead, this presumption is intended to prevent proof that would be improper to make. The presumption avoids compelling the former client to prove the very things

that he seeks to keep confidential. If the presumption were rebuttable, that is, if the attorney could attempt to prove that he did not recall any disclosure of confidential information, or that no confidential information was in fact disclosed, this could also defeat the purpose of keeping the client's secrets confidential. The confidences would be disclosed during the course of rebutting the presumption by the attorney, or if the presumption was considered rebutted, the client might again be put into the anomalous position of having to show what confidences he entrusted to his attorney in order to prevent those confidences from being revealed. We conclude the presumption of disclosure is not susceptible of rebuttal by proof."

We find this reasoning persuasive. Therefore, since Seagram has established that there is a substantial relationship between the matters involved in the work previously performed and the instant litigation, we will presume that confidential matters were disclosed during the course of that representation, and this presumption is not susceptible to proof to the contrary.

■■ Plaintiffs next contend that the trial court erred in ruling that Schultz had not clearly and effectively rebutted the presumption that he shared in confidential information disclosed to Biro by Seagram. Initially, they argue that the trial court, and presumably this court, are bound to follow Federal precedents in the absence of Illinois case law. In support thereof, they cite the Committee Commentary to Canon 4 of the Illinois Code of Professional Responsibility (79 Ill. 2d Canon 4, Committee Commentary), which states in pertinent part:

"Resolution of [the extent to which a lawyer may properly represent interests adverse to those of a former client] is less a question of drafting than of case-by-case application of the relatively straightforward principle, embodied in Rule 4—101(b)(2), that a lawyer may not 'use a confidence or secret of his client to the disadvantage of the client.' A developing body of case law exists in this area. (See, *e.g., Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.* (7th Cir. 1979), 607 F.2d 186 and the series of Second Circuit cases culminating in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751.) These cases suggested the advisability of retaining the ABA language in order that ongoing interpretation of that language may be directly relevant to Illinois courts."

They maintain that *Novo,* cited in the Committee Commentary, requires denial of disqualification under the facts of the instant case, ar-

guing that the trial court, and again presumably this court, are bound by the rule established therein that the presumption that members of a firm share client confidences is rebuttable, and by the type of proof recognized in *Novo* as clearly and effectively rebutting that presumption.

Nothing in the above-quoted language appears to change the general rule that the decisions of the United States district courts and circuit courts are not binding on Illinois courts. (*City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 368 N.E.2d 891.) Of course, such decisions will be given respectful consideration (*People ex rel. Swiderski v. Brierton* (1978), 65 Ill. App. 3d 153, 382 N.E.2d 628), but will be adopted only to the extent that we find the rationale and reasoning thereof persuasive (*Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 413 N.E.2d 47). Since the question raised by plaintiffs constitutes a matter of first impression before this court, it is appropriate under the circumstances that we consider the rule established by the Federal courts with regard to disqualification of an attorney who did not personally perform the actual legal services involved in the prior representation but was associated during the relevant time period with the attorney who did perform those services. The Seventh Circuit has refined the standard to be applied in a series of recent cases. It begins with the presumption that members of a law firm share their client's confidences with one another; this presumption "recognizes not only the realities of law practice but also the ethical considerations of Canon 9: 'A lawyer should avoid even the appearance of impropriety.' " (*Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.* (7th Cir. 1979), 607 F.2d 186, 196-97.) This standard was explained more fully in *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715, 723:

> "Accordingly, if an attorney can clearly and effectively show that he had no knowledge of the confidences and secrets of the client, disqualification is unnecessary and a court order of such might reasonably be regarded as an abuse of discretion. A district court, in resolving this issue, may of course rely on any of a number of factors, among them being the size of the law firm, the area of specialization of the attorney, the attorney's position in the law firm, and the demeanor and credibility of witnesses at the evidentiary hearing."

Furthermore, because these Canons are aimed not only at protecting the attorney-client relationship but also at maintaining public trust in the integrity of the Bar by avoiding even the appearance of impropriety, a very strict standard of proof must be applied, and any doubts as

to the existence of a conflict resolved in favor of disqualification. (*La Salle National Bank v. County of Lake* (7th Cir. 1983), 703 F.2d 252.) Finally, where the present litigation seeks to attack the validity of the work performed during the prior representation, Canon 9 may require disqualification where there is even the slightest possibility that confidential information may be used to a former client's disadvantage. See *Schloetter v. Railoc of Indiana, Inc.* (7th Cir. 1976), 546 F.2d 706.

We find the above reasoning persuasive, since it strikes a balance between the former client's right to protection of its confidences and secrets and the present client's right to counsel of its own choosing, while also bearing in mind the need to prevent the appearance of impropriety. It is clear that the trial court also found these cases persuasive, since it adopted the very rule which plaintiffs now assert that it failed to follow. It appears from their argument that plaintiffs' real concern is not the rule of law applied by the trial court, but its failure to find *Novo* factually dispositive. In *Novo*, defendant's attorney represented it while a partner in the law firm representing the plaintiff in the action before the court. While a member of that firm, he had performed approximately 2¼ hours of work on a matter substantially related to the pending suit, but left that firm prior to the commencement of the action. The motion was to disqualify plaintiff's counsel, but defendant's attorney did not allege in his affidavit that he shared any confidences with other members of the firm, and the remaining members stated that no information was received. The court found this evidence sufficient to clearly and effectively rebut the presumption that confidences were shared with other members of the firm.

Plaintiffs assert that the evidence in the instant action is identical and similarly undisputed. However, we are not persuaded that the evidence before the trial court was not in conflict. Here, contrary to plaintiffs' assertion, Biro did allege in general terms that the information received from Seagram was shared. He stated that it was common practice during the 16 years in which he and Schultz were associated to discuss all client matters. Schultz, on the other hand, denied the existence of any such practice and stated categorically that Biro never shared any client confidences with him. In *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715, the court found such general allegations and denials sufficient to create a question of fact. There, the plaintiff sought disqualification of the firm representing the defendant, alleging that an associate in that firm was formerly associated with its counsel. Plaintiff's counsel alleged that it was a firm policy to distribute various legal opinions and memoranda to all lawyers in the firm and that members of the firm often dis-

cussed cases with each other. The associate in question averred by way of affidavit that he had no knowledge of anything related to his former firm's representation of plaintiff and had not read the circulated memoranda and opinions. The court found that these affidavits created a factual question, thus distinguishing the case from *Novo* where the affidavits were "uncontradicted," and remanded to the trial court for consideration of the factual question not previously considered by it, *i.e.*, whether the presumption of shared confidences had been clearly and effectively rebutted.

It appears, then, that the conflicting affidavits here raised a question of fact, not a question of law as plaintiffs assert. Moreover, here, unlike *Freeman*, the trial court did consider the question and ruled thereon. Therefore, this court's task on review is to determine whether the evidence supports the trial court's finding. In this regard, plaintiffs argue that the trial court's finding must be reversed because it failed to make detailed findings of fact. However, under Supreme Court Rule 366(b)(3)(i) (87 Ill. 2d R. 366(b)(3)(i)) such findings are not necessary to support the judgment or as a basis for review, and we presume that the trial court found all issues and controverted facts in favor of the prevailing party (*National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 418 N.E.2d 1114).

■ Here, in addition to the affidavits in question, the trial court had before it evidence with regard to the size of the law firm, Schultz' position therein, and his experience in representing firms such as Seagram, all relevant factors in determining whether the presumption has been rebutted. (See *La Salle National Bank v. County of Lake* (7th Cir. 1983), 703 F.2d 252.) The trial court was aware that, during the relevant time period, Schultz, Biro & Karmel was a four-member firm. Schultz admits that at the very least Biro was an employee, although it does appear that the firm held itself out to the public, including Seagram, as a partnership; however, the exact relationship is immaterial, so long as they were in some way associated in the practice of law. (See *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751.) Although Schultz attempts to refute the existence of a relationship, the trial court could well have found otherwise, given the fact that letters were sent to clients under the firm name, including by Schultz, that in writing to clients the attorneys, including Schultz, used the plural "we" in referring to services performed, and that clients were billed by the firm. Therefore, given the size of the firm, Schultz' position therein as employer/senior partner, and his experience in the type of work undertaken on Seagram's behalf, the trial court could well have found Biro's assertion

that confidences were regularly shared more credible than Schultz' categorical denial. At best, the evidence created some doubt and, given the strict burden of proof plaintiffs bear, we cannot say that the trial court abused its discretion in this matter.

 Moreover, any doubts raised should be resolved in favor of disqualification, particularly in a case such as this where the work performed during the prior representation is being attacked. In *Schloetter v. Railoc of Indiana, Inc.* (7th Cir. 1976), 546 F.2d 706, the plaintiff in a patent infringement action moved to disqualify defendant's counsel. A former member of that law firm had represented plaintiff in connection with his patent application, but had since left the firm. There, the court found that the inference that other members of the firm shared in confidential information had not been sufficiently rebutted; it then went on to note:

> "Moreover, we think the district court's strict enforcement of Canon 9 was particularly appropriate in a case such as this where the subject matters involved in the former and present representations are so closely related. The validity and scope of the very patent Mr. Jeffrey, while a Donnelly partner, helped to procure is at issue in the pending infringement action. In these circumstances, all doubt should be resolved in favor of disqualification in order to 'prevent any possibility, however slight, that confidential information acquired from \*\*\* [Schloetter] during a previous relationship may \*\*\* be used to \*\*\* [Schloetter's] disadvantage' in this case. [Citation.]" (546 F.2d 706, 712.)

Similarly, here, the trial court found, and plaintiffs do not dispute, that the instant action challenges the very work performed during the prior representation. Under the circumstances, if even the slightest possibility exists that confidential information may have been communicated to Schultz, Canon 9 requires disqualification.

Nevertheless, plaintiffs further argue that, in the light of the conflicting evidence presented by the affidavits, the trial court erred in disqualifying Schultz without first conducting an evidentiary hearing, citing *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715. They maintain that the record here contains no more facts than were before the court in *Freeman,* wherein the appeals court remanded with directions that the trial court hold an evidentiary hearing and make findings of fact with regard to the question whether the presumption had been rebutted.

 As noted above, we believe that there is sufficient evidence to support the trial court's determination; furthermore, unlike the situation in *Freeman,* the trial court here *did* consider the issue and make

a finding that the evidence was insufficient to rebut the presumption. Plaintiffs had ample opportunity below to present whatever evidence they desired with regard to the motion, and, despite indications from the trial court that it was willing to receive additional evidence, plaintiffs did not even request an evidentiary hearing until after the trial court had ruled and they were seeking to have it vacate that order. The trial court apparently concluded, and we agree, that it had sufficient information upon which to base its determination. However, if there was additional evidence which plaintiffs could have presented, they were aware from the time the motion was filed that the burden was on them to produce it; they will not be heard to complain now that they did not produce enough in the absence of any indication that the court would not have received it had it been offered. It is axiomatic that there can be no error in failing to receive evidence that was never offered. See *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126; *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1974), 21 Ill. App. 3d 510, 316 N.E.2d 255.

■■ Finally, plaintiffs contend that the trial court erred in disqualifying Schultz from representing them in this action against Federated. It is undisputed that Federated has never been represented by Schultz, Biro, or any other attorney ever associated with Schultz and that Seagram and Federated are entirely separate and unrelated corporations. Nevertheless, Federated argues in conclusory terms that "[t]his ethical principal [*sic*] must also be applied to Federated, since Schultz was privy to Federated's business secrets through his former representation of Seagram. It is only reasonable to assume that in undertaking changes in its corporate structure, Seagram had to disclose some of the secrets of its main distributor, Federated."

Even if we were to make the unsupported assumption urged upon us by Federated, it is clear by their very terms that Canons 4 and 9 protect only clients and former clients. We see no basis in logic or precedent for extending their coverage to anyone who might have done business with a client or former client, and conclude that Federated is not protected in the instant case by Canons 4 and 9 of the Illinois Code of Professional Responsibility. Accordingly, that portion of the order which disqualifies Schultz and the law firm of Schultz & Schultz from representing plaintiffs in this action against Federated is reversed. We note also Seagram's argument that Schultz should be disqualified from representing plaintiffs against any defendant in this action because there is a danger that information acquired as a result of the prior representation will be disclosed, even inadvertently, in the course of Schultz' work with co-counsel, and we believe that if Schultz

continues in his representation of plaintiffs in their action against Federated that the court should grant a severance on motion of any party.[2]

For the foregoing reasons, the trial court's order disqualifying Schultz and his law firm from representing plaintiffs is affirmed as to defendant Seagram but reversed as to defendant Federated and the cause is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings.

WILSON, P.J., and MEJDA, J., concur.

---

[2]Plaintiffs' motion to sever was denied without prejudice because it was made by Schultz after entry of the order disqualifying him.