FIRST NATIONAL BANK OF ELGIN, Plaintiff and Counterdefendant-Appellee, v. ST. CHARLES NATIONAL BANK, as Trustee, *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District No. 2—85—768

Opinion filed January 16, 1987.—Rehearing denied April 3, 1987.

A. Denison Weaver, of A. Denison Weaver, Ltd., of Chicago, for appellants.

Pamela Kirkland Jensen, of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendants-counterplaintiffs, Winifred Kolodzik and St. Charles National Bank, as trustee (defendants), appeal from a judgment of foreclosure entered against their real estate in favor of plaintiff-counterdefendant, First National Bank of Elgin (plaintiff). Defendants also appeal from a directed finding in favor of plaintiff on their counterclaim sounding in fraud in the inducement. Defendants contend the trial court erred in (1) striking their jury demand, (2) denying defendants' motion to disqualify plaintiff's counsel, (3) finding for plaintiff on its complaint for foreclosure and entering a directed finding in favor of plaintiff as to defendants' counterclaim, and (4) making an arbitrary determination of attorney fees.

This litigation arose after defendant, Winifred Kolodzik, became sole stockholder and president of Hahn Truck Center (Hahn), a franchised dealer of International Harvester, upon the death of her husband, Edward Kolodzik, in January 1980. On August 26, 1980, Kenneth Kolodzik, defendant's son, applied for a $350,000 business loan to the corporation from plaintiff bank, a certified Small Business Administration (SBA) lender. The SBA approved the loan on October 27, 1980, and plaintiff notified Hahn the loan would be disbursed 10

to 14 days from that date.

On November 14, 1980, plaintiff had not yet made the disbursement to Hahn and advised Mrs. Kolodzik that it could advance a portion of the loan proceeds to Hahn if she established interim collateral in the form of a first mortgage on her personal residence and an adjoining lot held in trust by defendant St. Charles National Bank in which she owned the beneficial interest. Upon execution of the mortgage documents by defendants, Hahn received $115,000 from plaintiff which it applied to operating expenses. In late January 1981, plaintiff advised Mrs. Kolodzik that an additional $90,000 had been deposited in Hahn's account and she issued various checks to its creditors, including International Harvester, based upon that information. However, plaintiff subsequently withdrew the $90,000 from Hahn's account before the checks had cleared and International Harvester revoked Hahn's dealership when its check was returned for insufficient funds. Hahn subsequently filed for bankruptcy.

On October 20, 1981, plaintiff filed a complaint for foreclosure of the mortgage against Mrs. Kolodzik and St. Charles National Bank. Defendant filed her answer on December 17, 1981, raising an affirmative defense of fraud in the inducement and pleading a counterclaim for damages and injunctive relief based upon plaintiff's alleged negligent delay in processing of the loan. A stay of all proceedings, entered in February 1982, was vacated on May 1, 1983, and defendant filed an amended counterclaim and jury demand on May 10, 1983. On June 13, 1983, the trial court granted plaintiff's motion to strike defendant's jury demand as untimely.

In February 1984, defendant's attorney learned that plaintiff's counsel, the firm of Brady, McQueen, Martin, Collins & Jensen, had been retained from 1972 through 1979 to handle business and personal matters of defendant and her late husband; defendant's attorney thereupon notified the firm of the possibility of a conflict of interest. Any conflict was disclaimed by the firm, which made its files available to defendants for review.

On June 18, 1985, defendant moved to disqualify plaintiff's counsel on conflict of interest grounds, supported by an affidavit stating that an examination of the firm's files revealed various Hahn corporate documents from 1971 through 1979 relating to the original purchase of Hahn Truck Center, purchase of the International Harvester dealership, maintenance of the corporate books, and negotiations of leases on the business property. An affidavit submitted by defendant stated she and her husband had disclosed confidential information regarding their assets to the firm in connection with the preparation of

their wills. On June 28, 1985, the trial court denied the motion to disqualify plaintiff's counsel, finding there was no substantial relationship between the representation of defendant and Hahn Truck Center, Inc., by that law firm and its subsequent representation of plaintiff.

The matter went to a bench trial on plaintiff's complaint for foreclosure of its mortgage and defendants' amended counterclaim premised upon alleged false representations inducing defendant to enter into the mortgage for which defendants sought actual and punitive damages. In their answer to plaintiff's foreclosure complaint defendants also asserted fraud in the inducement as an affirmative defense. At the close of all evidence in the principal case, the trial court found that defendants failed to establish the defense of fraud in the inducement and entered judgment for plaintiff for foreclosure in the principal sum of $115,000 together with $88,636.35 as interest. The trial court also granted plaintiff's motion for a directed finding against defendants on their counterclaim. Thereafter, the court granted plaintiff's petition for attorney fees and costs, awarding plaintiff $22,500 in fees and $2,000 for costs. Defendants appeal.

At trial, plaintiff's only witness was Roger Navik, a commercial loan officer for plaintiff bank, who testified that a $115,000 business loan secured by a first mortgage on defendant's residential property was disbursed to Hahn Truck Center, Inc., on November 14, 1980, and was to be repaid on March 14, 1981. He stated that payment had not yet been made on the loan, that $88,636.35 in interest had accrued on the loan to date, and that the bank had incurred attorney fees and related costs in foreclosure of the mortgage. On the mortgage note, defendant had listed her address as the Hahn Truck Center, Inc., and had certified the loan would be used solely as working capital for the corporation. The note also provided that defendant would pay all legal expenses and attorney fees incurred by the bank in collecting on it after a default.

Kenneth Kolodzik, general manager of Hahn Truck Center, Inc., testified for defendants that an International Harvester strike, high interest rates, and corporate obligations arising out of the construction of a new business facility led to cash flow difficulties which forced Hahn to seek a business loan to the corporation in August 1980, from plaintiff bank. The SBA loan was secured by liens on Hahn's equipment, inventory, fixtures, general intangibles on a trustee's mortgage against the land and buildings occupied by Hahn Truck Center, Inc. The loan agreement also required that Mrs. Kolodzik and her son obtain life insurance policies in the amount of $175,000 each to secure payment. He also testified that on October 14, 1980, Rob

Schoppe, plaintiff's vice-president of commercial loans, had notified him that the SBA had approved the loan and that the bank would disburse the funds within 14 days, but it did not do so.

Kenneth Kolodzik further testified that in mid-November 1980, Hahn was experiencing severe cash flow difficulties and had not yet received the loan funds despite the fact that all the outstanding liens on Hahn's property had been extinguished. Schoppe had then assured Kolodzik that disbursement of the funds was merely delayed for a short time by the need for final signatures on the loan and suggested the bank advance a portion of the loan to Hahn. At a meeting on November 14, 1980, Schoppe told Mrs. Kolodzik and Kenneth that the bank would require interim collateral in the form of a mortgage on her personal residence to approve the partial disbursement of $115,000 in the event that Hahn subsequently decided not to accept the SBA loan. Schoppe advised them that once the loan was fully approved, the bank would deduct the $115,000 interim amount, plus interest, and discharge the mortgage on Mrs. Kolodzik's home before disbursing the balance of the loan to Hahn. The witness stated that Schoppe assured them that defendant's personal residence would not be used as collateral for the SBA loan.

Kenneth Kolodzik also testified that the $115,000 advance was used to pay Hahn's immediate operating expenses. He continued to request disbursement of the balance of the loan and in late January 1981, plaintiff deposited $90,000 of the SBA loan in Hahn's account. Hahn issued checks to creditors on the basis of the deposit, and the bank then withdrew the funds from Hahn's account before the checks cleared. On February 5, 1981, International Harvester revoked their franchise to Hahn Truck Center, Inc., after a check issued to it by Hahn was not honored because of insufficient funds.

On cross-examination, Kolodzik stated that liens were placed on the Hahn property after November 14, 1980, and that he and his mother did not apply for the required insurance policies until January 2, 1981. He testified that when he applied for the SBA loan on October 1, 1980, he submitted a July 1980 financial statement which showed a $154,000 loss for the year. Records for the business also showed subsequent net losses of $195,606 for August 1980, $202,952 for September 1980, and $311,752 for October 1980. Kolodzik stated that current financial statements for the business were provided to the bank throughout the loan process and that Schoppe never said he required additional documentation for disbursement of the SBA loan.

Mrs. Kolodzik testified she did not have any business training and was not active in the operation of Hahn Truck Center, Inc. She first

met Schoppe when she signed the loan application and noted that the bank had already prepared the necessary documentation. She stated the $115,000 loan in November 1980 was only an advance of the SBA loan and that Schoppe assured her the SBA loan would be disbursed within two weeks. He also assured her the mortgage on her house would be discharged when the SBA loan was disbursed.

On cross-examination, Mrs. Kolodzik stated she knew when she signed the mortgage on her home on November 14, 1980, that Hahn had not yet submitted all of the documentation required for disbursement of the loan. She testified it was her impression that Hahn had no obligation to repay the $115,000 advance if the SBA loan was not disbursed and that she relied on Schoppe's representation that there would be a future disbursement of the loan in signing the mortgage agreement. On examination by the court, Mrs. Kolodzik testified she was aware at the time she signed the mortgage and note that it must be repaid.

James Hurley, an attorney specializing in bank lending practices, testified for defendants that SBA loan regulations prohibit the use of loan proceeds for payments or loans to owners, partners, or shareholders of the corporation and plaintiff therefore could not deduct any portion of the SBA loan proceeds to repay the $115,000 advanced to defendant. Hurley testified that plaintiff's action also violated an SBA regulation prohibiting SBA lenders from making substantial alterations in the terms of the loan which benefit the lender without written consent of the SBA and that plaintiff benefitted from the $115,000 advance because the bank acquired a secured mortgage loan on which interest would accrue. He also stated that the requirements of the SBA loan approval form must be completely met before there can be any disbursement and partial disbursements are not allowed before these requirements are satisfied.

On cross-examination, Hurley testified a borrower's obligation to obtain life insurance is a minor factor in acquiring an SBA loan. He stated that plaintiff could have used the SBA loan to retire defendant's debt only if it had a waiver from the SBA and that where a bank commits an unauthorized act in connection with an SBA loan and the borrower subsequently defaults, the bank's only recourse is against the borrower. He agreed that plaintiff would be correct in refusing to disburse the loan if it became aware that there were severe management problems prior to the SBA's authorization of the loan. He noted the loan authorization itself is not a loan agreement, but contains a statement of conditions the borrower must meet before the loan will be granted.

Hurley also testified that Hahn's records revealed it fully cooperated with plaintiff and there was no evidence of management problems or a substantial decline in net worth which would have precluded disbursement. He stated that the loan should have been disbursed in mid-December 1980 at the latest and that plaintiff did not run a title check on Hahn's property until after January 7, 1981.

We consider first plaintiff's argument that this court lacks jurisdiction to entertain defendant's appeal from two of the orders entered by the trial court because defendant's notice of appeal refers only to those orders dated August 14, 1985, and September 12, 1985, while the order striking defendant's jury demand was entered June 13, 1983, and the order denying defendant's motion to disqualify counsel was entered June 28, 1985. However, a notice of appeal is to be liberally construed and an appeal from a subsequent final judgment will draw in question all prior nonfinal rulings and final but nonappealable orders which produced the judgment. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380; *Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 804, 480 N.E.2d 1312, *appeal denied* (1985), 108 Ill. 2d 567; *American International Hospital v. Chicago Tribune Co.* (1983), 120 Ill. App. 3d 435, 438, 458 N.E.2d 1305.) The orders striking defendant's jury demand and motion to disqualify counsel were final interlocutory rulings which were not appealable when entered and were drawn into question by defendant's notice of appeal from the subsequent final judgments. We conclude that this court has jurisdiction to review those orders, and we deny the motions taken with the case relating to this issue.

Defendants first contend that the trial court erred in striking their jury demand as untimely. A defendant who desires a trial by jury must file a demand not later than the filing of his answer and failure to do so constitutes a waiver of that right. (*In re Estate of Biewald* (1984), 127 Ill. App. 3d 269, 277, 468 N.E.2d 1321, *appeal denied* (1984), 101 Ill. 2d 580; *People ex rel. Chrisco v. Carnes* (1983), 114 Ill. App. 3d 417, 419, 449 N.E.2d 207; Ill. Rev. Stat. 1983, ch. 110, par. 2—1105.) Here, the defendants filed their answer to the complaint on December 17, 1981, but did not file a jury demand until the amended counterclaim was filed on May 10, 1983. Defendants argue, however, that they were not entitled to request a jury trial until that date because the original answer and counterclaim had only requested equitable, not legal, relief. However, the record clearly shows that defendant requested $1 million in damages in her original counterclaim and although entitled to request a trial by jury at that time,

did not do so.

█ Moreover, a party seeking to file a late demand for jury trial must show good cause for failure to comply with the statute and show that no prejudice or inconvenience will result from the late filing. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 107, 382 N.E.2d 1205; *Margolies v. Landy & Rothbaum* (1985), 136 Ill. App. 3d 635, 637, 483 N.E.2d 626; *In re Estate of Johnson* (1984), 129 Ill. App. 3d 22, 28, 472 N.E.2d 72, *appeal denied* (1985), 102 Ill. 2d 504.) Here, although the fact that the jury demand was made more than two years prior to trial may be considered as a showing of lack of prejudice to plaintiff, defendants fail to offer any good cause for its untimely demand. We conclude that the trial court properly exercised its discretion in striking defendant's demand for a jury trial as untimely.

█ Next, defendants contend that the trial court erred in denying the motion to disqualify plaintiff's counsel, the law firm of Brady, McQueen, Martin, Collins & Jensen, under Canon 4 ("A lawyer should preserve the confidences and secrets of a client") and Canon 9 ("A lawyer should avoid even the appearance of professional impropriety") of the Illinois Code of Professional Responsibility. (87 Ill. 2d Rules 4–101, 9–101.) The relevant test under the Code is " 'where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.' " (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1051, 452 N.E.2d 804, quoting *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 664, 440 N.E.2d 1073.) In cases where, as here, the question involves resolution of factual issues, the trial court's determination will not be disturbed unless unsupported by the evidence. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1054, 452 N.E.2d 804; see generally *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 665, 440 N.E.2d 1073.

In the few Illinois cases considering the question, the courts have found a substantial relationship between past and subsequent representations where parties were immersed in litigation involving the dissolution and division of their various business interests and defendant's attorney had set up corporations, given legal advice, and owned shares of stock jointly with both plaintiff and defendant (*Weglarz v. Bruck* (1984), 128 Ill. App. 3d 1, 5-6, 470 N.E.2d 21, *appeal denied* (1985), 101 Ill. 2d 593); where plaintiffs alleged defendant, a liquor manufacturer, had violated statutes relating to the use of assumed

corporate names and plaintiff's attorney, during a prior reorganization of defendant's corporate structure, had filed applications on defendant's behalf to do business under various assumed names (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1046, 452 N.E.2d 804); and where condominium owners were involved in litigation over their rights as owners and attorneys for the successor in interest to the condominium developer had previously counselled these same owners regarding their rights against the original condominium developer (*La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 665, 440 N.E.2d 1073).

The evidence in the present case discloses that plaintiff's counsel had received confidential information concerning the personal assets of Mrs. Kolodzik and her late husband when their wills were drawn up in 1972; had represented them in their attempts to secure a $30,000 loan from her father-in-law in 1972; prepared various corporate documents on an annual basis from 1971 through 1979; had represented them during negotiations for the purchase of Hahn Truck Center, Inc., in 1972 and the International Harvester dealership in 1975; and had advised her husband regarding the possibility of filing suit for misrepresentation against the sellers of Hahn Truck Center, Inc. Defendants argue this evidence establishes the existence of a substantial relationship between the firm's prior representation of Mrs. Kolodzik and her husband and the firm's subsequent representation of plaintiff in the present foreclosure proceeding. We disagree.

■ The facts in this case do not demonstrate the type of substantial relationship between the prior and subsequent representation recognized in the cited cases. It is quite clear that plaintiff's counsel had not represented Mrs. Kolodzik or her husband in any significant manner since 1975 and that the prior representation did not concern the 1980 transactions which are the subject of the present dispute. Moreover, prior to the application for and receipt of the $115,000 interim loan on November 14, 1980, Mrs. Kolodzik provided plaintiff with ample documentation concerning the current financial status of Hahn Truck Center, Inc., in connection with her application for the SBA loan. Any similar information provided to plaintiff's counsel during their prior representation of defendant was either outdated or superseded by this subsequent documentation.

■ In any event, defendant's failure to raise this issue in the trial court at an earlier time effectively waives the right to object to plaintiff's counsel on conflict of interest grounds. Defendant's attorney first became aware of the prior representation in February 1984, but

did not file a motion for disqualification of plaintiff's counsel until June 18, 1985. Under similar circumstances, the courts have held that such delay constitutes an effective waiver of a party's objection to an alleged conflict of interest (see *Tanner v. Board of Trustees* (1984), 121 Ill. App. 3d 139, 146-47, 459 N.E.2d 324, *appeal denied* (1984), 101 Ill. 2d 551; *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1053, 452 N.E.2d 804; *Roth v. Roth* (1980), 84 Ill. App. 3d 240, 244, 405 N.E.2d 851, *appeal denied* (1980), 81 Ill. 2d 599), and we would apply that doctrine to the present case.

■ Defendants next contend that the trial court erred in finding at the close of defendant's case that they had failed to establish the affirmative defense of fraud in the inducement and entered judgment for plaintiff on its action for foreclosure. To establish fraud in the inducement, which is a valid defense to an action on a note, a party must prove that a misrepresentation of material fact was made; that the misrepresentation was untrue and that the party making it knew or had reason to believe it was untrue; that it was made for the purpose of influencing the party to whom the statement was made to act; that the party believed the statement and acted in reliance upon it; and that the reliance led to the party's injury. (*Dolce v. Dolce* (1982), 108 Ill. App. 3d 817, 821, 439 N.E.2d 1028; *Colonial Bank & Trust Co. v. Kozlowski* (1982), 106 Ill. App. 3d 639, 642, 435 N.E.2d 1251; *Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1104, 435 N.E.2d 528.) Defendants argue that plaintiff had serious reservations on November 14, 1980, concerning its planned disbursement of the SBA loan to Hahn because it knew its promised conduct would violate SBA regulations and was aware of Hahn's continuing losses, the outstanding liens on Hahn's property, and the failure of Mrs. Kolodzik and her son to acquire the requisite life insurance. Nevertheless, argue defendants, plaintiff made repeated assurances on that date that the SBA loan proceeds would be disbursed in the near future and would discharge the interim loan, thus inducing Mrs. Kolodzik to agree to the interim loan and mortgage on her personal residence in order to meet Hahn's immediate operating expenses.

■ Before addressing this contention, we must first consider two counterarguments raised by plaintiff. The bank first notes that the gravamen of defendant's fraud count is the bank's assertion that it would disburse the SBA loan proceeds in the near future and argues that a promise of future conduct cannot constitute a material misrepresentation in support of an allegation of fraud. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 883-84, 489 N.E.2d 311;

*Gross Valentino Printing Co. v. Clarke* (1983), 120 Ill. App. 3d 907, 912, 458 N.E.2d 1027.) However, an exception to this general principle has been established where, as alleged here, the promise is made with no intention of performing the acts and is part of a preexisting fraudulent scheme. *Parks v. City of Evanston* (1985), 139 Ill. App. 3d 649, 653, 487 N.E.2d 1091; *Donnelly v. Washington National Insurance Co.* (1985), 136 Ill. App. 3d 78, 90, 482 N.E.2d 424, *appeal denied* (1985), 111 Ill. 2d 554; *Concord Industries, Inc. v. Harvel Industries Corp.* (1984), 122 Ill. App. 3d 845, 849, 462 N.E.2d 1252.

Plaintiff further argues defendant may not raise a claim of fraud in the inducement absent a showing that she has tendered the $115,000 loan back to the bank. In support, plaintiff cites *Glen v. Dodson* (1932), 347 Ill. 473, 479, 180 N.E. 393, where our supreme court held that a purchaser of securities could not rescind the sale without tendering back the consideration he received. However, that decision was based upon the then section 37 of the Illinois Securities Law, which expressly required a tender of the securities purchased before an action could be maintained. (347 Ill. 473, 478, 180 N.E. 393.) Its current counterpart, section 13A of the Securities Law of 1953 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.13(A)), provides that an action may be maintained where such securities were not received by the purchaser. In the present case, Mrs. Kolodzik did not receive securities, or anything else, from plaintiff as the funds were paid directly to Hahn Truck Center, a corporation, for its business purposes.

▋ Generally, a court of review will not disturb a trial court's finding unless its judgment is against the manifest weight of the evidence. (*Cosmopolitan National Bank v. Cook County* (1984), 103 Ill. 2d 302, 318, 469 N.E.2d 183; *Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142, 482 N.E.2d 1085; *Village of Lakemoor v. First Bank* (1985), 136 Ill. App. 3d 35, 42, 482 N.E.2d 1014, *appeal denied* (1986), 111 Ill. 2d 568.) Upon review of the record, we conclude the trial court's determination that defendants failed to establish the affirmative defense of fraudulent inducement is against the manifest weight of the evidence presented in trial.

The uncontradicted evidence is that plaintiff told Mrs. Kolodzik the SBA loan would be promptly disbursed and would discharge the interim loan secured by defendant's home; that promise was a material fact upon which she could, and did, rely in her decision to apply for the interim loan; that the statement was untrue; that plaintiff made this statement for the purpose of inducing defendant to apply for the loan; and that defendant has been injured by her reliance upon that statement. Moreover, there was testimony that defendant and

her son had failed to complete the necessary loan documentation, that Hahn was experiencing management difficulties and that plaintiff's proposed conduct would violate SBA regulations. We find there was evidence plaintiff had reason to believe its promise to Mrs. Kolodzik was untrue and that defendant established the affirmative defense of fraud in the inducement. Accordingly, we reverse the trial court's judgment for plaintiff on its action for foreclosure as against the manifest weight of the uncontradicted evidence. See *In re Estate of Davison* (1981), 102 Ill. App. 3d 644, 646, 430 N.E.2d 222; *Devers v. Prudential Property & Casualty Insurance Co.* (1980), 86 Ill. App. 3d 542, 547, 408 N.E.2d 462.

 Defendant-counterplaintiff further contends the trial court erred in granting plaintiff-counterdefendant's motion for a directed finding against defendant on her counterclaim for fraud in the inducement. When a defendant moves for a directed finding at the close of a plaintiff's case, the court must first consider whether the plaintiff made out a *prima facie* case, *i.e.*, has presented at least some evidence on every element essential to his cause of action. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43; *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 352, 478 N.E.2d 1132, *appeal denied* (1985), 108 Ill. 2d 585.) Some evidence is defined as more than a scintilla. (*Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 111, 427 N.E.2d 974; *Chicago Title & Trust Co. v. Ceco Corp.* (1980), 92 Ill. App. 3d 58, 68, 415 N.E.2d 668.) Our prior determination that defendant-counterplaintiff established the affirmative defense of fraudulent inducement is necessarily a finding that she made out a *prima facie* case of fraud in the inducement as to the counterclaim.

Where a plaintiff has presented a *prima facie* case, the court must weigh all of the evidence, including any favorable to the defendant. If the court finds the evidence diminishes or negates some element necessary to plaintiff's case, it should grant defendant's motion for a directed finding. If, on the other hand, sufficient evidence necessary to establish a *prima facie* case remains, as it did here, the motion should be denied and the trial proceed. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 155, 407 N.E.2d 43; *International Harvester Credit Corp. v. Helland* (1985), 130 Ill. App. 3d 836, 839, 474 N.E.2d 882.) Plaintiff here failed to present any evidence refuting defendants' testimony relating to fraud in the inducement, and we conclude that the trial court erred in directing a finding for plaintiff as to the counterclaim and that matter must be remanded for further proceedings.

As we reverse the judgment for foreclosure entered in favor of plaintiff, that portion of the judgment relating to attorney fees and

costs awarded necessarily is also reversed, and we need not consider defendants' contention that plaintiff was entitled only to fees incurred in collecting upon the note and not those fees incurred in defending against defendants' counterclaim for fraud.

Accordingly, the judgment for foreclosure is reversed. The judgment directing a finding for counterdefendant on the counterclaim is also reversed and will be remanded for further proceedings.

Reversed in part; reversed and remanded in part.

LINDBERG, P.J., and WOODWARD, J., concur.