The People of the State of Illinois, Plaintiff-Appellee, v. Maurice Hewlin, Defendant-Appellant.

Gen. No. 48,027.

First District, Second Division.

November 1, 1960.

Muriel C. Farmer and Howard T. Savage, of Chicago (Howard T. Savage, of counsel) for appellant.

Benjamin S. Adamowski, State's Attorney of Cook county (Francis X. Riley and John T. Gallagher, Assistant State's Attorneys, of counsel) for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Johnny Isler was on trial before the court without a jury charged with the crime of robbery while armed with a dangerous weapon. Maurice Hewlin testified for the defendant as an alibi witness. The court found the defendant guilty. Subsequently the court adjudged Maurice Hewlin guilty of direct contempt in that he gave false testimony in a matter material to the issue and sentenced him to confinement in the County Jail for six months. He appeals.

The judgment order may be summarized as follows: Three men testified for the State that Johnny Isler, on trial for armed robbery, committed an armed robbery at 8:50 P.M. in Chicago on February 13, 1959. The respondent Hewlin, is married to Isler's sister. On direct examination on June 11, 1959, respondent testi-

fied that on February 13, 1959, after 6:30 P.M. his wife and Isler were present in respondent's home, and that the reason he remembered the night was that Isler and respondent's wife wanted to make a telephone call to their mother in Albany, Georgia. His wife and Isler did make a telephone call. Isler left respondent's home at a time unknown to respondent on the morning of February 14, 1959. On cross-examination Hewlin testified that he had worked at the Morgan Park Postal Station on February 13, 1959 from 6:00 A.M. to 2:30 P.M.; that he then went home and did not leave there until after his wife who was employed called on the telephone at 6:30 P.M.; that he drove his car and picked up his wife and Isler and arrived back home with them at 7:00 P.M.; that 45 minutes or an hour later his wife placed a call to her mother in Albany, Georgia; that he asked his wife and Isler not to hold up the telephone so long; that he did not know what time Isler left the next morning because he, respondent, leaves home between 5:30 and 5:45 A.M.; and that when he left home that morning Isler was there and that respondent did not talk to the mother on the telephone. On redirect examination he testified that he worked at the Morgan Park Postal Station on February 14, 1959.

Recalled for further redirect examination on June 12, 1959, Hewlin testified that he did not remember whether or not he worked on February 13 and February 14, 1959, although he recalled having testified that he did work on those days. On recross-examination Hewlin testified that he couldn't be sure that he went to work on February 13 and 14, 1959, but he was sure Isler was there because it was St. Valentine's Day. Further on redirect examination Hewlin testified that he did not know whether or not a call was actually made to Albany, Georgia on the night of February 13, 1959, but that his wife and Isler had told him that the

42

call was to be to Albany, Georgia. He did not listen to the telephone conversation and was not near the telephone. On further cross-examination Hewlin testified that he argued with his wife concerning the call to Albany; that the call was made on February 13, 1959, but he didn't know whether it was to Albany, Georgia nor whether or not it is a fact that Isler and his wife actually spoke to their mother; that he did not hear the telephone conversation; that they had told him they were going to call their mother; that he is not sure that he went to work on February 13, 1959; that he is sure Isler was at respondent's home on February 13, 1959, and stayed overnight to February 14, 1959; that he is not sure that he worked on February 13 and 14, 1959. Earl De Mar of the Illinois Bell Telephone Company testified as a rebuttal witness for the People that the records of that corporation show that no long distance call was made on February 13, 1959, or during the month of February, 1959, from the only telephone maintained in the Hewlin home. James L. Carpenelli, also a rebuttal witness, testified that records of the United States Post Office showed that Hewlin did not work at any branch of the postoffice on February 13 or 14, 1959. After Isler was found guilty in the robbery trial he, Isler, "admitted" in open court that "no long distance call was made from the Hewlin home on February 13, 1959."

■■ The parties recognize that whether a person is guilty of direct contempt by virtue of giving alleged false testimony as to a material fact in a trial must be determined from the four corners of the contempt order. "When a court is said to know of its own knowledge that certain matters have occurred in open court before him, no testimony is required or permitted in a proceeding for direct contempt." People v. Harrison, 403 Ill. 320, 86 N.E.2d 208. Respondent insists that the court lacked personal knowledge of the falsity of his

43

answers for want of either an admission by him that he falsely testified in a matter material, or because there is no incontrovertible evidence showing his testimony to be false.

■ The time and place of the robbery are fixed by three People's witnesses as 8:50 P.M. on February 13, 1959, at 3115 Archer Avenue, Chicago. A reading of the order shows that the court did not have personal knowledge that the telephone call to Albany, Georgia was not made. Proof of the falsity of Hewlin's testimony about the telephone call was made by testimony beyond the court's personal knowledge and by the admission defendant Isler made after the finding of guilty in the robbery trial. The order also shows respondent's uncertainty as to whether or not he had worked at the Morgan Park Postoffice on February 13 or 14, 1959. The fact that the court chose to believe the testimony of the witnesses rather than the testimony of respondent does not establish that the court had personal knowledge of the facts. The court weighed the credibility of the witnesses and their testimony against that of respondent. The fact that respondent made changes on cross-examination and redirect examination in the degree of certainty of his testimony on direct examination is not sufficient to support a finding that he is guilty of direct contempt of court. See People v. Anderson, 272 Ill. App. 93, 103. The record does not establish that respondent admitted that he testified falsely in a material matter or that there was unquestioned and incontrovertible evidence before the court showing his testimony to be false. Therefore the judgment is reversed.

Judgment reversed.

FRIEND and BRYANT, JJ., concur.