People of the State of Illinois, Defendant in Error, v. Edward Koniecki, Plaintiff in Error.

Gen. No. 48,091.

First District, First Division.

January 23, 1961.

Morris G. Meyers, of Chicago, for plaintiff in error.

Benjamin S. Adamowski, State's Attorney of Cook county (Francis X. Riley and Marvin E. Aspen, Assistant State's Attorneys, of counsel) for defendant in error.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by Edward Koniecki from a contempt order entered after the close of a criminal trial, before a jury in the Criminal Court. He was a key witness for the People and was sentenced to the County Jail for a term of one year.

The defendant, Joseph Panczko, was charged with having burglariously entered the garage of Koniecki, who, with his son, participated in the apprehension of

Panczko at the scene of the alleged crime. During the trial of Panczko, Koniecki twice refused to testify. After considerable delay, he completed his testimony, the trial was concluded, and the jury acquitted the defendant.

The court found Koniecki "gave false testimony in a matter material to the issues in the case then on trial," and that "it was offered by said defendant with the intent to deceive and mislead the Court and jury in determining the guilt or innocence of the defendant."

The proceedings were summary, and respondent made no admission of having given false testimony. The facts upon which the finding was entered are fully recited in the order of court. It shows that Koniecki was called as the court's witness and was recalcitrant in refusing to testify. He stated he was fearful for his life and the safety of his family. After being ordered by the court to testify, his testimony differed from his pre-trial statements. On being questioned as to the inconsistencies, he became evasive and again refused to testify. The court postponed the trial to give Koniecki an opportunity to confer with counsel. After he conferred with counsel, the trial resumed, and he then gave testimony which was consistent with his pre-trial statements.

The order finds that Koniecki gave inconsistent testimony "as to whether the man seen by him at the door of the garage . . . did or did not enter said garage," in a matter material to the issues in the case then on trial, and that this testimony "did not result from misunderstanding or confusion on the part of said defendant when testifying in open court, but, rather, it was offered by said defendant with the intent to deceive and mislead the Court and jury in determining the guilt or innocence of the defendant Joseph Panczko in the burglary case then on trial."

After the entry of the contempt order, Koniecki filed a verified petition to vacate the judgment of con-

485

tempt, which was denied. The petition sets forth detailed facts of intimidation of Koniecki and his wife and the terror under which he was laboring when called upon to testify. It reflects a difficult situation for a conscientious trial judge, who is endeavoring to give both sides a fair trial and to properly enforce the law as it applies to contumacious witnesses.

The pertinent parts of the petition, which are uncontroverted and undenied, show that (a) he was surrounded by police twenty-four hours a day; (b) the day after the apprehension of Edward Panczko, the latter's brother called plaintiff in error's home while police officers were there. The officers told plaintiff in error to allow Joseph Panczko to come on to his home, and when Joseph Panczko came, police officers with drawn guns apprehended him; (c) his wife received numerous telephone calls where she was employed. A male voice on several occasions told her, "Your husband and son will wind up in the bottom of the river if they don't keep their mouths shut"; (d) he told the Assistant State's Attorney that he was becoming terribly frightened and terrorized and was terribly confused and upset; (e) he left his employment and sought work elsewhere in an effort to discourage his tormentors; (f) on the day Koniecki was subpoenaed for the trial, he was driving to court, and a short way from the Criminal Court building where he had stopped for a red light, an automobile drove alongside his car and two unknown men pointed at plaintiff in error and said, "If you open your mouth today you'll get your head blown off"; and that when plaintiff in error arrived at the Criminal Court building, he went to the State's Attorney's office and told the Assistant what had happened.

The refusal of a witness to testify may so directly obstruct a court in the performance of its duty as to justify punishment for direct contempt. Although the court experienced great difficulty in securing the

testimony of Koniecki, it is conceded that he did ultimately testify. Therefore, the principal question is whether Koniecki's inconsistent testimony in the presence of the court constituted direct contempt.

 Direct contempt, that is, contumacious acts committed in the court in the presence of the judge, of which he has personal knowledge, may be adjudged and punished in a summary manner without prior notice, written charges, plea, issue or trial. The act having been committed in the presence of the court, evidence is unnecessary, and no record need be made. The accused has a right of appeal, and it is necessary for the court to enter a written order, setting forth fully, clearly, and specifically, the facts out of which the contempt arose, so that the reviewing court may determine if the committing court had jurisdiction to enter the order. (People v. Loughran, 2 Ill.2d 258, 263, 118 N.E.2d 310 (1954).) It is questionable that, for perjury alone, a witness may be summarily punished for contempt. People v. Harrison, 403 Ill. 320, 327, 86 N.E.2d 208 (1949); People v. Hewlin, 28 Ill.App.2d 40, 169 N.E.2d 819 (1960); Brown v. United States, 356 U. S. 148 (1958).

 An obstruction to the performance of judicial duty, resulting from an act done in the presence of the court, is the characteristic upon which the power to punish for direct contempt must rest. In order to punish perjury in the presence of the court as a contempt, there must be added to the essential elements of perjury, under the general law, the further element of obstruction to the court in the performance of its duty. If the element of obstruction to the court was not essential, it would follow that when a court believed that a witness was testifying untruthfully, it would have power to impose punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful, and the freedom of the citizen, when called

as a witness in a court, would be gravely imperiled. (Ex parte Hudgings, 249 U. S. 378 (1919).) The power to punish for contempt does not reside in the court to compel a witness to testify in accord with the court's conception of the truth. Where the court is not justifiably convinced that the performance of its duties has been obstructed, it cannot act under the contempt power, even though perjury has been committed. Blim v. United States, 68 F.2d 484 (1934).

The recitals of the order indicate that, from the outset of the cross-examination of Koniecki, he was in a state of terror and very excited. He so limited his initial testimony that it was inconsistent with his pre-trial statements. While being cross-examined by the State as to these inconsistencies, he refused to answer a question that called for an answer inconsistent with his initial testimony. When directed by the court to answer the question, he persisted in his refusal, making it necessary for the court to postpone the trial until Koniecki conferred with counsel, upon which he resumed the stand and testified consistently with his pre-trial statements. This resulted in Koniecki testifying in accordance with the court's conception of truth and placing inconsistent testimony in the record. We do not believe that the record establishes that Koniecki was deliberately trifling with the court, or that he was wilfully or intentionally contemptuous in his conduct and inconsistent statements, or that his conduct was calculated to embarrass, hinder or obstruct the court in the administration of justice, or calculated to lessen its authority or dignity. People v. Gholson, 412 Ill. 294, 298, 106 N.E.2d 333 (1952).

We believe that justice will best be served by the reversal of this judgment.

Judgment reversed.

KILEY, P. J., and BURMAN, J., concur.