THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC M. THOR, Defendant-Appellant.

(No. 55525;

First District—July 11, 1972.

*Rehearing denied August 2, 1972.*

Marvin D. Michaels, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Henry A. Hauser, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from an order that found defendant guilty of direct criminal contempt and sentenced him to four months confinement in the Chicago House of Correction. Three issues are presented. However, the one decisive of this appeal is whether the trial judge erred when, before entering the contempt order, he heard evidence of what the defendant did outside the court's presence before and after the in-court conduct for which he was found criminally contemptuous.

On August 12, 1970, defendant and a number of University of Illinois students were in court charged with criminal trespass. When the case was called, a baby began to cry. The judge asked the young man with the baby to leave the courtroom. As he did, a young woman cried out, "They're not letting our witnesses in!" The judge instructed court officials to escort the young lady out of the courtroom. Then, another defendant

in the case began to fight with the officer who was escorting the young woman. Spectators became involved "[a]nd there was a general melee in the courtroom * * * a riot * * *." Two days later, a warrant for contempt of court was issued for defendant's arrest. He surrendered. The cause was then continued to August 20, 1970.

On that day, the trial judge, "for the record," reviewed the events of August 12. He described the call of the case, the crying of the baby, the request to the young man that he take the child out, the outcry of the young woman and the ensuing melee that brought on the courtroom "riot." The trial judge then said, "I, in my occulant [sic] presence, observed the defendant, Eric Thor, fighting with the officers. Now his conduct was contemptuous, constituted direct contempt of this court. It tended to embarrass or obstruct the court in the administration of justice and tended to bring the administration of law in disrepute. I therefore, summarily find that Eric Thor is guilty of direct contempt of this court. Now I will hear any evidence in mitigation or aggravation of this offense, Mr. State's Attorney."

Defendant's counsel then moved for dismissal of the proceedings, for specification of the contempt charge, for a continuance and for discovery. The motions were denied. The State called three witnesses: police officer Truman Stromberg, police lieutenant John Molloy and deputy sheriff Robert B. Kutz.

Stromberg testified that on August 12, 1970, at about 9:30 A.M. he was in the Civic Center Plaza. A group of about 45 youths gathered there carrying signs and placards. Defendant was present and said to the group: "Everybody gather around. I want your attention. Now when we get up in this courtroom, this is our courtroom and its going to be our trial. If we all stick together and when one claps everybody claps. When one hisses everybody hiss, and we stick together and they can't throw us all out or there would be no trial." Stromberg said that he later saw defendant in the courtroom during the disturbance.

Lieutenant Molloy testified that on August 12, 1970, at about 9:15 A.M., he was in the Civic Center Plaza. There were about 35 individuals participating in a demonstration. He recognized defendant as one of the participants. "I heard Eric Thor address the group I assumed to be students from the University of Illinois Circle Campus. I heard him say, 'We've got to stay together in a group—they can't lock all of us up.'" When Molloy was cross-examined, he said that although he was in the courtroom during the disturbance, he could not "[r]ecall that I observed Eric Thor at that time." He next saw defendant three days later, on Saturday the 15th of August. It was in the Civic Center Plaza. Defendant spoke to a group of students and said to them, "We should have

been better organized, we should not have let them take any of us out of the courtroom."

Deputy Sheriff Kutz testified that on August 12, 1970, he was in the courtroom during the disturbance. He saw the defendant strike a Sergeant Joseph Matalone. He did not hear defendant say anything in the courtroom, nor did he hear him say or do anything inside the courtroom before he struck Matalone.

After the State announced that it had completed its presentation, the trial judge told defense counsel that in addition to defendant, he was limited to the same number of witnesses the State had called: three. Counsel's objection to this ruling was overruled. Defendant then called three witnesses whose testimony concerned the courtroom disturbance. At the conclusion of the hearing, the trial judge entered the order in which he found that on August 12, 1970, "[t]he court observed the contemnor, Eric Thor, strike an officer of the court with his fist about the head and body * * * this officer of the court was identified as Sergeant Joseph Matalone, deputy sheriff of Cook County, Illinois."

Defendant contends that this order cannot stand because it was entered after the trial judge heard evidence concerning facts he did not know and events which did not occur in his presence during the courtroom disturbance of August 12, 1970. For example, it was the testimony of Deputy Sheriff Kutz that disclosed to the trial judge the identity of Matalone, a deputy sheriff, as the individual who was struck by defendant and the consequences of that act; it was the testimony of Officer Stromberg and of Lieutenant Molloy that disclosed to the trial judge speeches defendant made in the Civic Center Plaza before and after the courtroom incident. This evidence, it is insisted, was taken into consideration by the trial judge when he decided defendant's guilt and when he imposed punishment for what he found was direct criminal contempt of court.

In meeting defendant's contention and arguments, the State points out that his conduct was criminal contempt for which the court could have imposed summary punishment without notice or trial. The hearing which the court conducted "[p]ermitted both the State and the Defense to present witnesses in what must be considered an attempt to clarify the situation, and more importantly, an attempt to show the defendant that he was getting a 'fair deal' ". In any event, the State argues, the trial judge did not rely "[o]n the allegedly extraneous and immaterial segments of the testimony presented by State witnesses" because before the hearing, he stated the facts and the grounds on which the contempt citation was based. This action, the State insists, "[s]hows that the court below did not take into account any of the allegedy immaterial testi-

mony of the State's witnesses in convicting defendant of direct contempt."

██ In a proceeding involving direct criminal contempt, that is, a contempt committed in the presence of the judge, in court, which he observes and has personal knowledge of, no formal charge is filed and no plea, issue or trial is required. (*People v. Carr*, 3 Ill.App.3d 227, 278 N.E.2d 839.) In such a case, the accused has the right to appeal. For this reason, it is necessary that a written order be entered setting forth fully and clearly the facts out of which the contempt arose. (*People v. Rongetti*, 344 Ill. 107, 116, 176 N.E. 292.) No fact which did not occur in the presence of the trial judge may be considered by him in adjudging guilt or in fixing the punishment which the court imposed. (See *People v. Bialek*, 31 Ill.App.2d 281, 175 N.E.2d 278; *People v. DeStefano*, 64 Ill.App.2d 368, 212 N.E.2d 368.) And on appeal, the reviewing court will look solely to the contempt order.[1] *People v. Richardson*, 397 Ill. 84, 72 N.E.2d 851; see *People v. Tomashevsky*, 48 Ill.2d 559, 273 N.E.2d 398; compare *People v. Augustino*, 207 Ill.App. 252 (abstr.); *People v. Hewlin*, 28 Ill.App.2d 40, 169 N.E.2d 819.

Although he could have, the trial judge did not summarily enter an order adjudging defendant guilty of direct criminal contempt. (See *In re Terry* (1888), 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405.) He first conducted a hearing. Speaking "for the record," the judge said that during the courtroom disturbance "I * * * observed the defendant, Eric Thor, fighting with the officers." In a colloquy that followed, defendant's counsel asked the trial judge, "Will your Honor state what officers you observed the defendant fighting with?" The judge replied, "No, sir, I will not. I just said I observed him fighting in the courtroom in my occular [sic] presence." Then, at the conclusion of the hearing, before entering the written order, the trial judge said to the defendant, "I stated when I cited you for direct contempt that I saw you fighting with a police officer. Captain Kutz corroborated this vision [sic] or statement that I made." In the contempt order, the judge found that "[i]n its ocular presence the court observed the contemnor, Eric Thor, strike an officer of the court with his fist about the head and body. This officer of the court was identified as Sgt. Joseph Matalone, deputy sheriff of Cook County, Illinois."

---

[1] Where the record on appeal incorporates a report of the proceedings, or where the record contains pleadings involved, the reviewing court will examine the report of proceedings or the record to determine whether the contempt order was properly entered. See *People v. Baxter*, 50 Ill.2d 286, 278 N.E.2d 777; *People v. Mulliken*, 41 Ill.App.2d 282, 190 N.E.2d 502; *In re Dunagan*, 80 Ill.App.2d 117, 225 N.E.2d 119.

From our examination of the record, we are constrained to conclude that before he heard the testimony of Deputy Sheriff Kutz, the trial judge did not know who the defendant struck during the courtroom disturbance nor did he know the consequence of the defendant's action. It was only Kutz who knew that Matalone "seemed to be pretty gravely beaten up. He had a mark under one eye and his elbow was swollen * * *. He is recuperating * * *. He is on medical leave." Thus, the identity of the person and the consequences of the courtroom disturbance were facts unknown to the trial judge but which were brought to his attention by evidence produced at the hearing. To these facts must be added those disclosed by Officer Stromberg and Lieutenant Molloy who described to the trial judge defendant's speeches to his fellow students before and after the courtroom disturbance.

It its brief, the State refers to what was said by Stromberg and Molloy as "[t]he allegedly immaterial * * * the allegedly improper * * * the allegedly extraneous and immaterial segments of the testimony presented by state's witnesses." It argues, however, that a presumption exists that the court below considered only competent testimony in arriving at the sentence imposed.

■■ There is this presumption in our law. (*People v. Richardson*, 17 Ill.2d 253, 161 N.E.2d 268.) But in this case the trial judge announced, prior to entry of the contempt order, that he was going to hear "[e]vidence in mitigation and aggravation of this offense * * *." The purpose of a hearing in mitigation or aggravation is to determine the degree of punishment for the crime committed. (*People v. Terry*, 12 Ill.2d 56, 60, 145 N.E.2d 36.) Evidence which a court hears in aggravation or mitigation is to aid it in reaching the proper sentence to be imposed. (*People v. Thompson*, (Ill.App.2d), 273 N.E.2d 30.) We must assume then, that when the trial judge proceeded to hear "evidence in mitigation and aggravation," it was for the purpose recognized by law: to aid him in fixing the punishment. (See Ill. Rev. Stat. 1969, ch. 38, par. 1—7(g).) For this reason, the presumption on which the State relies is overcome. *People v. Severinghaus*, 313 Ill. 456, 145 N.E. 220; see *People v. DeGroot*, 108 Ill.App.2d 1, 247 N.E.2d 177.

■■ Therefore, we conclude that before he entered the order that found defendant guilty of direct criminal contempt and imposed the sentence, the trial judge considered matters improper in a direct criminal contempt case. (*People v. Loughran*, 2 Ill.2d 258, 118 N.E.2d 310.) Under these circumstances, defendant was deprived of due process of law under State and Federal constitutions. (See *Johnson v. Mississippi* (1971), 403 U.S. 212, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423; *People v. Loughran, supra.*)

For these reasons, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion. *People v. Jashunsky,* 51 Ill.2d 220, 282 N.E.2d 1.

Reversed and remanded with directions.

STAMOS, P. J., and SCHWARTZ, J., concur.