JACOB L. WEGLARZ *et al.*, Plaintiffs-Appellees, v. THEODORE J. BRUCK *et al.*, Defendants-Appellants.

First District (4th Division) Nos. 83—1342, 83—1343, 83—1344, 83—1399 cons.

Opinion filed October 4, 1984.

JIGANTI, J., dissenting.

Guerard, Konewko & Drenk, Ltd., of Wheaton (Robert L. Thompson and Douglas Drenk, of counsel), for appellants.

Goldstine and Broida, Ltd., of Summit (Ronald J. Broida and Richard J. Skrodzki, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:
Theodore J. Bruck, defendant, brings this consolidated interlocutory appeal, seeking reversal of four separate orders of the trial court. The numerous issues which have been raised on appeal may be summarized as follows: (1) whether the trial court abused its discretion in disqualifying the firm of Konewko, Drenk and Thompson as attorneys for defendant, and (2) whether Douglas Drenk, defendant's attorney, was properly held to be in contempt of court.
We affirm.
The plaintiffs are Jacob Weglarz, Cynthia Weglarz, I-Del, Inc., and Conteco Company. Defendant Bruck and plaintiff Jacob Weglarz (hereafter Weglarz) are business associates in several enterprises, including the two corporate plaintiffs, I-Del, Inc. and Conteco Company. This matter comes before us on the third interlocutory appeal arising from litigation which dates back to March 19, 1982. Plaintiffs filed a complaint in the chancery division of the circuit court of Cook County seeking specific performance and injunctive and other relief. The complaint listed numerous business entities owned jointly by defendant Bruck and plaintiff Weglarz. It was further alleged that due to a deteriorating relationship between Weglarz and Bruck, the parties had agreed to dissolve their business interests and sever the business relationship. The case has proceeded through the trial court, its progress

underscored by numerous motions and two earlier interlocutory appeals (Weglarz v. Bruck (1983), Nos. 82—1362, 83—249, both unpublished).

The facts pertinent to this present appeal may be summarized as follows: In April 1982, plaintiffs moved the court to order the withdrawal of O'Brien, Guerard and Loveless as attorneys for defendant Bruck. At a hearing on the motion, plaintiff Weglarz and attorney O'Brien testified that both plaintiff and defendant had been associated with attorney O'Brien in various business matters for several years beginning in 1969. Weglarz claimed to have divulged confidential information to O'Brien during the period of their association. O'Brien denied receiving any such confidential information from Weglarz. The trial court found that attorney O'Brien's former business association with plaintiff and defendant made him privy to sensitive information about both parties. The court ruled that the firm of O'Brien, Guerard and Loveless was disqualified from participating in any litigation between Weglarz and Bruck. Konewko, Drenk and Thompson replaced O'Brien, Guerard and Loveless as attorneys for defendant Bruck. On May 20, 1983, plaintiffs moved the court to compel withdrawal of defendant Bruck's second group of attorneys because attorney Guerard of the firm which formerly represented defendant was soon to join the firm presently representing defendant.

At a hearing on plaintiffs' motion, defendant Bruck presented evidence in support of his position that attorney Guerard would be isolated from any contact with the pending litigation. Defendant's attorney sought a change of venue, an evidentiary hearing on the issue, and demanded a jury on the question of withdrawal of attorneys. The trial court denied defendant's motions. On May 31, 1983, the trial court entered an order disqualifying attorney Drenk and the law firm of Konewko, Drenk and Thompson from representing defendant Bruck.

Shortly thereafter, defendant Bruck and his attorneys filed an interlocutory appeal of the trial court's order of May 31. On June 9, 1983, attorney Drenk individually appeared at a hearing on behalf of defendant Bruck. Attorney Drenk informed the trial court that there had been no order denying him leave to file another appearance; therefore, he had filed an appearance and intended to represent defendant Bruck. The court found Drenk to be in direct contempt of court and imposed a fine of $500. Defendant Bruck appeals the trial court's order of June 9. That appeal was consolidated with the appeal of the order of May 31, 1983.

Defendant argues at length that the trial court abused its discre-

tion in disqualifying the entire law firm of Konewko, Drenk and Thompson as attorneys for defendant because the court's action was based on the previous order of disqualification of attorney Guerard in 1982, which was itself improper. Defendant points out that the disqualification of attorney Drenk was done without the benefit of an evidentiary hearing. The record was devoid of any factual support for the trial judge's ruling. Plaintiffs failed to show how the prior involvement of attorney O'Brien with Weglarz is relevant to the present litigation, especially in light of plaintiffs' failure to present any evidence to support the court's ruling.

Defendant also argues that plaintiffs were obligated to show that specific confidences were imparted to attorney O'Brien by Weglarz. Since the specific nature of the confidential information and how it would be prejudicial to the plaintiffs was not explained, the trial court erred in disqualifying attorney Guerard in 1982 because of his association with O'Brien and the error has been extended to the disqualification of Drenk.

In his brief and during oral argument, defendant argued that the trend of the courts has been toward embracing the concept of the "Chinese wall" and away from disqualification of attorneys under facts such as these. Defendant cites *Novo Therapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.* (7th Cir. 1979), 607 F.2d 186, in support of his contention that the trial court was required to follow a three-step process in determining the scope of the former legal association between plaintiff and the attorney in question as to whether confidential information was given to the attorney and whether such information is relevant to the matter at hand. Defendant cites numerous cases to underscore his argument that since there was no evidence of what confidential information was passed from Weglarz to attorney O'Brien, the trial court should have allowed the defendant's attorneys to use the "Chinese wall" instead of disqualifying them.

The term "Chinese wall" is a fictional device used as a screening procedure which permits an attorney involved in an earlier adverse role to be "screened" from other attorneys in the firm. Typically, these procedures include prohibiting the attorney in question from any contact with the case. This may be done by restricting access to files, informing the attorneys working on the case of the barrier and assuring that it is maintained, and sometimes actually separating the attorney in question from those attorneys who are handling the case. The attorney in question does not receive a share of the fees from the litigation. Employment of this device prevents disqualification of the

entire law firm simply because one member of the firm previously represented a client who is now an adversary of a client currently represented by the firm. (See Note, 128 U. Pa. L. Rev. 677 (1980).) The Chinese wall defense offers courts a practicable solution to this problem of legal ethics, which seems to be facing the courts with growing frequency. However, the procedure can only be utilized where the attorney can clearly and effectively show that he had no knowledge of the confidences and secrets of the client. *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715, 723.

Canon 4 of the Illinois Code of Professional Responsibility directs that a lawyer should preserve the confidences and secrets of a client. (See 81 Ill. 2d R. 4—101.) Canon 9 provides that a lawyer should avoid even the appearance of professional impropriety. (See 81 Ill. 2d R. 9—101.) Thus, where, as in this case, there are facts which suggest that the former client (Weglarz) may indeed have disclosed confidences to attorney O'Brien, we must apply the standard test carved out by the courts in numerous cases involving this issue. See *Novo Therapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.* (7th Cir. 1979), 607 F.2d 186; *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804; *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073.

■■ The "Chinese wall" defense notwithstanding, the relevant test for disqualification under these facts is: where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1051, 452 N.E.2d 804; *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 664, 440 N.E.2d 1073.) Further, as proof of a substantial relationship, the former client need show no more than the matters embraced within the pending suit are substantially related to matters handled by the attorney in question during the previous representation. *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 664.

■■ In the instant case, the parties are embroiled in litigation involving dissolution and division of their various business interests. This includes division of interests in some of the corporate plaintiffs. Attorney O'Brien admitted that he set up corporations and gave legal advice and owned shares of stock jointly with Weglarz and Bruck in many of their numerous business ventures. This was enough to satisfy the trial court that it was improper for attorney Guerard, working

with O'Brien, to represent Bruck against plaintiff Weglarz. The record indicates that the law firms in question are not large firms employing scores of attorneys but are in fact small firms where the attorneys presumably work more closely with each other. Therefore, the trial court acted properly in disqualifying attorney Guerard. That exercise of the trial court's discretion will not be disturbed absent evidence of abuse of discretion. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1053, 452 N.E.2d 804, 812.

The trial court found that the extent of the involvement of attorney O'Brien in the affairs of plaintiff Weglarz was such that it at the very least appeared improper to allow attorney O'Brien's firm to continue its representation of Bruck. Attorney Guerard was not just one of a number of lawyers in the previously disqualified firm of O'Brien, Guerard and Loveless and thus may have been unfamiliar with the case; he was actually involved in the litigation along with attorney O'Brien. Now that attorney Guerard has joined the law firm presently representing Bruck, the trial court was again confronted with the problem. Once again, there was a small law firm where presumably there is more contact between the attorneys than would exist in a large, departmentalized firm. The trial court was familiar with the facts and was aware of attorney Drenk's position regarding erection of a Chinese wall. Nevertheless, the trial court made a factual determination in favor of plaintiffs' motion to disqualify defendant Bruck's attorneys. We cannot say that such a determination was unsupported by the evidence; therefore, it will not be disturbed. See *La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073.

We note also that defendant Bruck's attorneys argued that plaintiffs never proved what confidences were disclosed during attorney O'Brien's earlier association with Weglarz and Bruck. The law is clear that plaintiffs need not disclose with specificity what confidences were disclosed. Once it is shown that the prior representation was substantially related to the action in question, it is irrebuttably presumed that confidential information was disclosed. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1055, 452 N.E.2d 804, 813.) We find this reasoning persuasive.

As discussed earlier, there is ample evidence of a substantial relationship between the matters involved in the previous representation and the instant litigation. Further, the trial court recognized that members of a law firm are likely to share their client's confidences. (See *Novo Therapeutisk Laboratorium A/S v. Baxter Travenol Labo-*

*ratories, Inc.* (7th Cir. 1979), 607 F.2d 186.) Attorney Guerard was not just an attorney who happened to work for a previously disqualified firm; he was actually involved in the litigation and presumably shared confidences with attorney O'Brien. Under these circumstances, recognizing the realities of law practice and also the ethical consideration of Canon 9 that a lawyer should avoid even the appearance of impropriety (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1057-58, 452 N.E.2d 804, 813), we believe that the trial court acted properly in disqualifying the firm of Konewko, Drenk and Thompson (now Guerard, Konewko and Drenk).

The next issue raised is whether the trial court erred in finding attorney Drenk guilty of contempt of court. The trial court found attorney Drenk in direct contempt of court and fined him $500 for his refusal to comply with the order disqualifying his firm from representing defendant Bruck.

Attorney Drenk makes several arguments in support of his contention that the trial court erred in finding him guilty of contempt. He argues that the trial court's finding is against the manifest weight of the evidence. Since the trial court's order did not state that he could not file a subsequent appearance on behalf of defendant Bruck, attorney Drenk argues that his filing of a subsequent appearance after being disqualified cannot be the basis for a finding of contempt. Further, attorney Drenk argues that he acted in good faith to protect the interest of his client; therefore, he should not have been subjected to sanctions.

Attorney Drenk claims he was not proved guilty of criminal contempt beyond a reasonable doubt. He argues that the trial court's failure to state the specific acts and facts upon which the contempt finding was based underscores his contention. Additionally, he could not have been in contempt of court because he neither possessed the requisite intent to place the court in disrepute nor did he obstruct the court in its administration of justice. Finally, attorney Drenk argues that even if this court finds that his conduct was contemptuous, the fine imposed should be vacated since he acted in good faith on behalf of his client.

Contempt is generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice, to derogate from its authority or dignity or bring the administration of law into disrepute. (*People v. Siegel* (1983), 94 Ill. 2d 167, 171, 445 N.E.2d 762, 764.) Civil or criminal contempt, categorized as either direct or indirect, is essentially *sui generis* and is largely dependent for its classifi-

cation upon the nature of the punishment imposed. (*People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 277, 438 N.E.2d 1273, 1280.) When punishment for the contemptuous conduct is imposed for a punitive rather than coercive purpose, the contempt is characterized as criminal rather than civil. 108 Ill. App. 3d 266, 277.

Contempt may be further characterized as direct or indirect. Indirect contempt occurs outside the presence of the court and must therefore be proved by extrinsic evidence. (*People v. Jashunsky* (1972), 51 Ill. 2d 220, 223-24, 282 N.E.2d 1, 3.) Where an element of the offense is not observed by the judge and must be proved by testimony from third parties, then the accused contemnor must be given notice, a fair hearing and an opportunity to be heard (*Johnson v. Mississippi* (1971), 403 U.S. 212, 215, 29 L. Ed. 2d 423, 426-27, 91 S. Ct. 1778, 1779-80). Direct contempt has been defined as "one which takes place in the very presence of the judge, making all of the elements of the offense matters within the personal knowledge of the judge and tending directly to obstruct and prevent the administration of justice ***." (*People v. Howarth* (1953), 415 Ill. 499, 508, 114 N.E.2d 785, 790.) Extrinsic evidence is not necessary to prove direct contempt; therefore, it may be determined and punished summarily without the formalities of pleadings and trial. *People v. Thor* (1972), 6 Ill. App. 3d 1045, 1049, 286 N.E.2d 769, 772.

In this case, the contemptuous conduct occurred in the presence of the court. Attorney Drenk openly and clearly informed the court that he intended to and in fact did disregard the court's ruling. No extrinsic evidence was necessary since attorney Drenk's actions were directly observed by the court.

Further, attorney Drenk's actions before the court and his statements to the court that he did not intend to abide by the court's ruling proclaims the intentional nature of his conduct. See *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

■ We believe that the record clearly supports the trial court's finding of contempt (see *People v. Siegel* (1983), 94 Ill. 2d 167, 445 N.E.2d 762; *People v. Howarth* (1953), 415 Ill. 499, 114 N.E.2d 785) and, further, that the imposition of a fine was proper.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., concurs.

JUSTICE JIGANTI, dissenting:

The Illinois Code of Professional Responsibility states that "[a] lawyer shall not knowingly *** (1) reveal a confidence or secret of his client ***." (87 Ill. 2d R. 4—101(b)(1).) The law is quite clear that once it is shown that the subject matter of a prior representation is substantially related to that of a subsequent adverse representation, the attorney may not represent the new client in the present litigation. (*La Salle National Bank v. Triumvera Homeowners Association* (1982), 109 Ill. App. 3d 654, 440 N.E.2d 1073; *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804.) This is based on the irrebuttable presumption that when an attorney represents a client the attorney obtains confidences of his client during the course of that representation. As such, this presumption avoids compelling the former client to prove what confidences or secrets were revealed. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1055-56; *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751, 754.) Walter J. O'Brien had previously been removed as attorney for Bruck because the court found that O'Brien represented the plaintiff on a substantially related matter.

It is alleged in the plaintiff's motion that in fact Guerard represented the plaintiff in the prior representation. The evidence does not support that contention. Guerard's only involvement with the plaintiff was that when the plaintiff sought to discharge O'Brien as Bruck's counsel Guerard represented O'Brien in the proceeding.

Even though Guerard did not previously represent the plaintiff he may still be barred from representing Bruck in this proceeding because of another presumption in which the law engages, that is, the presumption that members of a law firm share confidences and secrets of their client. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804; *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751.) Consequently, it is presumed that since O'Brien formerly represented the plaintiff he had the plaintiff's confidences and secrets and he shared those with Guerard when Guerard was a member of O'Brien's law firm. It is further presumed, therefore, that Guerard in turn will share those confidences and secrets with his new law firm of Konewko, Drenk & Thompson. Most significantly for the instant case, this evidentiary presumption that members of a law firm share client confidences is rebuttable. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043,

1056, 452 N.E.2d 804; *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.* (2d Cir. 1975), 518 F.2d 751, 754.) Screening or erecting the metaphorical "Chinese wall" around the "infected" attorney is an acceptable method of rebutting this presumption. (*Armstrong v. McAlpin* (2d Cir. 1980), 625 F.2d 433, 442; *Kesselhaut v. United States* (U.S. Ct. Cl. 1977), 555 F.2d 791, 793; *Kadish v. Commodity Futures Trading Com.* (N.D. Ill. 1982), 548 F. Supp. 1030.) Bruck specifically contended that Guerard would be screened, but never received a hearing on his motion.

I believe that this matter should be remanded back to the trial court for a hearing on Bruck's contention that Guerard will be screened from the instant case in his new law firm. The court should consider the practical aspects of how screening would work, such as what will Guerard's access be to relevant files, whether he will derive any remuneration from his firm's representation of the defendant, and what measures have been taken to prevent Guerard from discussing the matter with other members of the law firm. Any conclusion about the effectiveness of the screening must be measured against the factual setting in this case. It must be remembered that the only evidence in the record concerning Guerard's involvement is that he was associated with O'Brien. He never represented the plaintiff. The attorney closest to this case was O'Brien. In fact, O'Brien, while acknowledging that he had a long association with the plaintiff in business, denied that he represented the plaintiff. Thus, Guerard's relationship with this litigant is evanescent.

The court in considering this matter must bear in mind that there is a countervailing interest of the defendant's right to be represented by counsel of his choice. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804; *Kadish v. Commodity Futures Trading Corp.* (N.D. Ill. 1982), 548 F. Supp. 1030.) He has already been deprived of one attorney in this proceeding. Further, there is a suggestion in some of these cases, and a specific allegation in this case, that these motions are made for tactical reasons or for harassment. (See *Board of Education v. Nyquist* (2d Cir. 1979), 590 F.2d 1241.) It is alleged that at the time plaintiff's counsel was advised that Guerard was about to join the new law firm the plaintiff raised no objection concerning Guerard until after settlement negotiations foundered. If Guerard's new law firm is disqualified from this case, this proceeding, which has already existed for far too many years, will be prolonged a great deal longer when new counsel will have to become acquainted with the matter. Additional expenses, if counsel is forced to withdraw, may be considerable.

The courts have counselled restraint in these matters and disqualification should be ordered when the attorney's conduct will taint the underlying trial. (*Armstrong v. McAlpin* (2d Cir. 1980), 625 F.2d 433, 445; *Board of Education v. Nyquist* (2d Cir. 1979), 590 F.2d 1241, 1242.) In ethical matters, the lines are fine and we cannot paint in broad strokes. (*United States v. Standard Oil Co.* (S.D.N.Y. 1955), 136 F. Supp. 345, 367; *Fund of Funds, Ltd. v. Arthur Andersen & Co.* (2d Cir. 1977), 567 F.2d 225, 227.) Disqualification is harsh when there is truly no unethical conduct and the matter is one of the superficial appearance of evil. (*Kesselhaut v. United States* (U.S. Ct. Cl. 1977), 555 F.2d 791, 793; see *Freeman v. Chicago Musical Instrument Co.* (7th Cir. 1982), 689 F.2d 715, 720-21.) It is only after a consideration of the screening procedures and a realistic consideration of the individual case that the delicate balance between the need to maintain the highest ethical standard and the right to be represented by freely chosen counsel that the decision in this case should be made. *Emle Industries, Inc. v. Patentex, Inc.* (2d Cir. 1973), 478 F.2d 562, 564-65; *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1058, 452 N.E.2d 804.

I would reverse and remand.