**In re Patrick M. COSTELLO, Sheri Costello, f/d/b/a Costello Construction, C & J Contractors, Inc., and Idle Hour Restaurant & Lounge, Debtor(s).**

**Bankruptcy No. BK 87–30797.**

United States Bankruptcy Court,
S.D. Illinois.

Jan. 20, 1989.

John Dale Stobbs, Alton, Ill., for debtor Sheri Costello.

Roza Gossage, Belleville, Ill., for debtor Patrick M. Costello, deceased.

MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on the Second Amended Request for Payment of

Fees and Expenses filed by McRoberts, Sheppard, Wimmer & Stiehl, P.C., debtors' former counsel, and on the objection thereto filed by co-debtor Sheri M. Costello, now known as Sheri M. Huller, by and through her present counsel, Stobbs and Sinclair. The fee application seeks fees of $5,170.00 and expenses of $137.00 for the period from September 15, 1987 to January 12, 1988.

Due to the unusual circumstances of this case, a brief summary of the facts is in order. Some time before August 31, 1987, Sheri and Patrick Costello (hereafter codebtors) retained Steven T. Stanton, an associate of McRoberts, Sheppard, Wimmer & Stiehl, P.C. to represent them as co-debtors in filing a petition for relief under the Bankruptcy Code. During this same time period, Sheri Costello retained attorney Thomas Benedict to represent her in obtaining a dissolution of her marriage to Patrick Costello. Patrick Costello was not represented by counsel in the dissolution of marriage proceeding. On August 31, 1987, the co-debtors filed a joint petition for relief under Chapter 7. Their bankruptcy estate had virtually no assets other than a parcel of real estate comprising their homestead and encumbered by a first and second mortgage.

The next day, September 1, 1987, the co-debtors were granted a decree of dissolution of their marriage by the Illinois state court. The decree of dissolution failed to distribute between the co-debtors the real property which they held as joint tenants with right of survivorship. Additionally, it failed to direct the removal of Sheri Costello as named beneficiary from certain life insurance policies insuring Patrick Costello's life. Four days later, on September 5, 1987, Patrick Costello was killed in a motor vehicle accident without resolution of who would receive the real estate and without the removal of Sheri Costello as beneficiary on the life insurance policies. Accordingly, as a result of the deficiencies in the decree of dissolution of marriage and Patrick Costello's inaction on the insurance policies, coupled with his untimely death, a dispute arose between Sheri Costello and the estate of Patrick Costello over entitlement to the real estate and to the insurance proceeds.

According to the fee application and Mr. Stanton's argument, by September 16, 1987, Mr. Stanton was aware of the existence of the life insurance proceeds and that they were property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5). However, for reasons unknown to the Court, the trustee in bankruptcy did not become involved in this dispute on behalf of the interests of the bankruptcy estate until some months later.

Thereafter, on September 18, 1987, Mr. Stanton and his firm were retained by decedent's mother, sister and brother to represent the heirs of Patrick Costello in a wrongful death action and to open his probate estate. By letter of September 21, 1987, in confirmation of a September 19, 1987 telephone conversation, Mr. Stanton wrote to Sheri Costello advising her that he had been retained as counsel by decedent's estate, that her interests and those of decedent's estate might be "at odds" and that she should retain other counsel to handle her interests. According to his Memorandum in Support of Request for Payment of Fees and Expenses (hereafter memorandum) Mr. Stanton also advised Sheri Costello at this time that her claims to these proceeds would create a conflict of interest since Mr. Stanton's firm represented both her and decedent's estate in the bankruptcy proceeding.

On September 28, 1987, decedent's probate estate was opened by Mr. Stanton's firm with John Costello, decedent's brother, as the administrator. On September 29, 1987, Sheri Costello appeared at the § 341 meeting represented by Mr. Benedict. According to Mr. Stanton's memorandum, during discussion with Mr. Benedict that day, Mr. Benedict indicated he had no objection to Mr. Stanton's representation of decedent's estate and they began to negotiate the resolution of the competing claims of creditors, decedent's estate and Sheri Costello.

On October 6, 1987, Mr. Stanton was contacted by John Stobbs of the law firm of Stobbs & Sinclair. Mr. Stobbs advised

that he, rather than Mr. Benedict, represented Sheri Costello. He further advised that Sheri Costello claimed full entitlement to the real estate and the insurance proceeds despite the pending bankruptcy.

According to Mr. Stanton's memorandum, on October 15, 1987, after Sheri Costello filed an objection to the appointment of John Costello as administrator of decedent's probate estate and attempted to obtain possession of certain assets of the bankruptcy estate, Mr. Stanton realized that the conflict was more serious than he had anticipated. Thereafter, on October 19, 1987, as a result of Mr. Stanton's efforts, Larry Brockman was retained as substitute counsel for decedent's estate. However, Mr. Stanton continued as attorney of record for both co-debtors in the bankruptcy case. According to the affidavit of Larry Brockman (see Exhibit E to Mr. Stanton's memorandum), it was understood that Mr. Stanton would remain as attorney of record in the bankruptcy case as long as this was agreed to by Sheri Costello's attorney. The affidavit, however, fails to indicate which parties reached this understanding or how such agreement would be evidenced.

On October 29, 1987, a meeting to discuss settlement was held between Mr. Stanton, Mr. Brockman and Mr. Stobbs. According to the Brockman affidavit, at this meeting it was orally agreed that Mr. Stanton would continue as attorney of record in the bankruptcy case and would be retained as consultant on bankruptcy matters until such time as the parties agreed that no settlement was possible. Sheri Costello argues that this oral agreement was not reached. On November 24, 1987, Mr. Stanton sent a letter to Mr. Stobbs enclosing a contract for legal services which sought written waiver of the conflict of interest. This contract was never signed. On November 25, 1987, Mr. Stobbs entered his appearance in the bankruptcy case as Sheri Costello's attorney.

On December 28, 1987, negotiations broke down between the parties and Roza Gossage was contacted by Mr. Stanton about taking over representation of both the probate and bankruptcy estates on behalf of decedent. On January 6, 1988, Mr. Stanton withdrew as attorney of record in the bankruptcy case and Ms. Gossage entered her appearance. At no time during the period for which Mr. Stanton seeks compensation did he, or any other party, advise the Court of the existence of a conflict of interest or of any failure of the trustee to comply with his statutory duties.

Sheri Costello raises several objections to the second amended fee application. She contends that fees charged by Mr. Stanton to determine the existence and resolution of a conflict of interest are wholly nonbillable. She further argues that fees should not be charged against the bankruptcy estate—or at least against her share of the bankruptcy estate—for legal services which did not benefit her or her bankruptcy estate or which were directly contrary to her interests. As to time spent by Mr. Stanton in connection with matters which were the responsibility of the bankruptcy trustee, she argues that a fee award is inappropriate. Finally, she objects to payment from the bankruptcy estate for services relating to the probate estate of Patrick Costello.

In response, Mr. Stanton argues that an actual conflict of interest did not arise until far into the time period in question and that he then took steps to extricate himself as soon as possible. In any event, he contends, Sheri Costello waived any conflict which did exist by inducing him to remain in the case as a consultant. As to services performed by Mr. Stanton contrary to Sheri Costello's interests, he argues that the services he performed served to protect and preserve the assets of the bankruptcy estate against Sheri Costello's claims of nonbankruptcy property. He further contends that he was pressed into performing these services by the trustee's failure to act. Finally, he argues that it was necessary to open the probate estate in order to carry out the duties of Patrick Costello as co-debtor in bankruptcy.

Attorneys who practice before this Court are governed by the Code of Professional Responsibility adopted by the Illinois Su-

preme Court. See Disciplinary Rule IVB of the Rules of the United States District Court for the Southern District of Illinois (October 1, 1980) (as amended).

That Code, Ill.Rev.Stat., ch. 110A, foll. para. 774 (1980), subjects attorneys to certain ethical canons and disciplinary rules that prohibit the representation of conflicts of interest. According to Rule 2–110(b)(2) of Canon 2, "[a] lawyer representing a client before a tribunal shall withdraw from employment ... if ... he knows or if it is obvious that his continued employment will result in the violation of a disciplinary rule." Canon 4 states that "a lawyer should preserve the confidences and secrets of a client." Canon 5 requires an attorney to "exercise independent professional judgment on behalf of a client." Under Rule 5–105(a), this mandates "declin[ing] proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment...." unless each client "consents to the representation after full disclosure...." Rule 5–105(c). Canon 9 states that "a lawyer should avoid even the appearance of professional impropriety." In Illinois, the relevant test under the canons to determine whether an attorney may continue to represent a client who is an adversary of a former client is whether any substantial relationship can be shown between the subject matter of the former representation and that of the subsequent adverse representation. In other words, the former client need only show that matters embraced within the pending litigation in which his former lawyer appears on behalf of his adversary are substantially related to the matters or cause of action in which the lawyer previously represented him. *E.g., LaSalle Nat. Bank v. Triumvera Homeowners Ass'n.,* 109 Ill. App.3d 654, 65 Ill.Dec. 218, 440 N.E.2d 1073 (1982); *Weglarz v. Bruck,* 128 Ill. App.3d 1, 83 Ill.Dec. 266, 470 N.E.2d 21 (1984). Moreover, under the substantial relationship test, doubts regarding the existence of a conflict of interest should be resolved in favor of disqualification of the attorney. *E.g., In re Whitney–Forbes, Inc.,* 31 B.R. 836 (Bankr.N.D.Ill.1983).

In the instant case, it is clear to the Court that a conflict of interest arose, and was anticipated by the parties, as early as September 16, 1987 when the existence of the life insurance proceeds became known. Mr. Stanton had been bankruptcy counsel for both Sheri Costello and decedent until this time. Both had divulged, at the very least, information concerning financial matters, with the expectation of confidentiality. When the dispute over the insurance proceeds and the real estate arose, it was incumbent upon Mr. Stanton and his firm to withdraw from representation of Sheri Costello and also of Patrick Costello's probate and bankruptcy estates. In fact, it was not enough for Mr. Stanton to advise Sheri Costello to seek substitute counsel. Because he continued to represent the decedent's estate, he placed confidences of Sheri Costello in jeopardy—or at least gave the appearance of doing so. Moreover, it was at best foolhardy to remain in the bankruptcy case as the attorney of record and consultant, and to undertake representation of decedent's probate estate without obtaining a clear written waiver of the conflict by the parties. While Mr. Stanton may have honestly believed that Sheri Costello requested he serve in the above capacity, this is not clear and unambiguous from the record and the Court finds no meeting of the minds in this regard.

Since the Court has determined that Mr. Stanton and his firm were involved in a conflict of interest prohibited by the canons of ethics and disciplinary rules of the Illinois Code of Professional Responsibility, it finds that a denial or a reduction in fees is warranted. *See, e.g., In re Roberts,* 46 B.R. 815, 846 (Bankr.D.Utah 1985), *aff'd in part and rev'd in part,* 75 B.R. 402 (D. Utah 1987). However, the extent of this reduction will be determined by the presence of mitigating factors which cause the Court to take into account equitable considerations. See, *e.g., In re Roberts,* 46 B.R. at 847–48; *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436 (Bankr.E.D.N.C. 1984); *In re Windsor Communications*

*Group, Inc.,* 68 B.R. 1007, 1016 (E.D.Pa. 1986).

 As already noted, this case is unusual both in its factual circumstances and in what both parties agree were certain shortcomings of the trustee in bankruptcy. Although neither co-debtor brought the failures or omissions of the trustee to the Court's attention during the period in question, it is clear that Mr. Stanton's actions were, at least in part, directed toward preserving and protecting the assets of the estate in the absence of the trustee taking steps to do so. Accordingly, given the unique posture of this case, the Court finds it equitable to award fees and expenses to counsel pursuant to 11 U.S.C. §§ 330(a) and 503(b)(2) for services performed in the stead of the trustee and which benefited the bankruptcy estate. That these services did not benefit Sheri Costello as a co-debtor—and may even have been to her personal detriment—does not disqualify them as legitimate services undertaken on behalf of the joint bankruptcy estate. The Court has found no authority calling for the apportionment of fees between co-debtors in a joint bankruptcy estate. Nor has Sheri Costello provided any authority in support of her objection that certain fees should be paid, if at all, from decedent's share of the bankruptcy estate. Therefore, fees and expenses will not be denied where the services benefited the bankruptcy estate—but not Sheri Costello—and even when the services should properly have been performed by the trustee in bankruptcy. Moreover, fees and expenses will not be denied for *reasonable* time and costs spent in determining the existence of a conflict and obtaining substitute counsel for clients.

Finally, as to time spent by Mr. Stanton and his firm in opening the probate estate of Patrick Costello, Bankruptcy Rule 1016 states, in pertinent part, that the "[d]eath ... of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death ... had not occurred." Because the individual debtor's role in the typical chapter 7 case is minor, with the administration of the estate conducted by the trustee, the debtor's death does not generally interfere in any significant way with the estate administration. *E.g.,* 8 *Collier on Bankruptcy,* ¶ 1016.04 at 1016–2 to 1016–3 (15th ed. 1988). The legislative history to 11 U.S.C. § 541 offers additional insight on the effect of the debtor's demise during a pending bankruptcy. It states:

> Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue in rem with respect to property of the estate, and the discharge will apply in personam to relieve the debtor, and thus his probate representative, of liability for dischargeable debts.

Senate Rep. No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5869.

 Accordingly, although the Court has been unable to locate any authority on the question of whether fees to open the probate estate are chargeable against the bankruptcy estate, it would appear that Rule 1016 and the legislative intent do not contemplate that the opening of a probate estate will be compensable from the bankruptcy estate in the usual situation. However, this same reasoning does not apply in the atypical case now before the Court. Here, property was acquired after commencement of the case which should have been included in the bankruptcy estate. In the absence of the trustee's active administration of the estate, it took effort on the part of Patrick Costello's probate estate to see that the property was included in the bankruptcy estate for payment to creditors. Nonetheless, since the probate estate was also opened for reasons apart from the bankruptcy proceeding—such as the wrongful death action—the Court will allow fifty percent of the fees and expenses

attributable to probate matters to be paid from the bankruptcy estate.

IT IS ORDERED that fees in the amount of *$3,182.00* and expenses in the amount of *$74.49* shall be allowed subject to the requirement that no disbursement of fees and expenses shall be made until completion of the final hearing.